## NATIONAL BANK *v.* JOHNSON.

1. The sole particular, so far as loans and discounts are concerned, in which sect. 5197 of the Revised Statutes places a national bank upon an equality with natural persons, is in permitting it to charge a rate of interest allowed to them which is prescribed and limited by the laws of the State, Territory, or district where the bank is located.

2. Although under those laws a contract between natural persons to reserve and pay upon the discount of business paper any stipulated rate of interest may be valid, such a contract, if a national bank be a party thereto, and the paper be in pursuance thereof transferred to it, is in violation of that section when such rate is in excess of seven per cent per annum.

3. A national bank in New York discounted for the payee, at the rate of twelve per cent per annum, certain promissory notes, which he then indorsed to it, and whereon he, against prior parties thereto, could have maintained an action. They were paid at maturity. He brought suit in due time against the bank for twice the amount of interest reserved and paid in excess of seven per cent per annnm. *Held,* that he was entitled to recover.

ERROR to the Supreme Court of the State of New York.

This action was brought in the Supreme Court of the State of New York by Johnson, to recover of the National Bank of Gloversville penalties alleged to have been incurred by it under sects. 5197 and 5198 of the Revised Statutes of the United States.

These sections are as follows : —

"SECT. 5197. Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or district where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this title. When no rate is fixed by the laws of the State or Territory or district, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. And the purchase, discount, or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest.

"SECT. 5198. The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred. That suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States, held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

The facts are undisputed. The defendant, a national banking association, doing business at Gloversville, New York, from Nov. 10, 1874, to Feb. 7, 1876, discounted for the plaintiff, at the rate of twelve per cent per annum, commercial paper and promissory notes amounting to $158,003. The amount of interest thereon which he paid, and the bank knowingly charged and received, was $6,564.88, being an excess of $2,735.36 beyond the rate allowed by the general laws of the State. The paper discounted was mostly business paper, that is, negotiable promissory notes, which he held and owned, and on which he could have maintained actions against the prior parties. A small portion was accommodation paper, but not known by the bank to be such, and nothing upon its face indicated that to be its character. All the paper was paid to the bank at maturity, or before the present action was brought. He indorsed all the notes at the times when they were discounted, and the proceeds were entered to his credit in his bank account.

Upon these facts judgment was rendered in his favor for $5,470.72, twice the amount of the interest paid in excess of seven per cent per annum, to reverse which this writ of error is prosecuted by the bank.

*Mr. Francis Kernan* for the plaintiff in error.

Johnson was not entitled to recover. By the long-settled law

of New York it is neither usurious nor unlawful for persons or copartnerships to do precisely what the bank did in regard to this business paper.

The transaction was not a loan of money, but a purchase of the paper, and it is immaterial whether Johnson indorsed it or guaranteed its payment or not. 3 Rev. Stat. N. Y. (5th ed.) p. 72, &c.; *Munn* v. *Commission Company*, 15 Johns. (N. Y.) 44; *Cram* v. *Hendricks*, 7 Wend. (N. Y.) 569; *Cobb* v. *Titus*, 10 N. Y. 198; *Rapelye* v. *Anderson*, 4 Hill (N. Y.), 472.

Corporations organized under the act of Congress of June 3, 1864, c. 106, are upon the same footing as a natural person in the State where they are located, so far as relates to the rate of interest on a loan, and to the amount of discount at which they may become the owners of commercial business paper. Rev. Stat. U. S., sects. 5197, 5198; *Tiffany* v. *National Bank of Missouri*, 18 Wall. 409; *First National Bank* v. *National Exchange Bank*, 92 U. S. 122; *Hintermister* v. *National Bank*, 64 N. Y. 212.

A large portion of the banking transactions in that State consists of acquiring business paper at a stipulated rate of discount. It would be contrary to the policy and spirit of the act, and seriously detrimental to those institutions, if they are to be liable to a heavy penalty for taking such paper at the same rate of discount at which it may be lawfully purchased by a natural person. *Tiffany* v. *National Bank of Missouri*, *supra*.

The provisions of the act were intended to prevent national banks from violating the usury laws of the State. In New York, where this transaction took place, it was usurious to loan or advance money to a party upon his own paper, or upon paper made for his accommodation, at a greater rate of interest or discount than seven per cent per annum; but it was not usurious or illegal to acquire, at an agreed discount exceeding that rate, business paper, that is to say, paper valid in his hands and whereon he could, against the prior parties thereto, maintain an action.

Penal provisions should not be extended to a case not clearly within their intent and meaning. Here full effect is given to them by applying the statute only to transactions which are

usurious by the laws of New York. If this transaction was not usurious by them, then the bank did not incur any penalty. Rev. Stat. U. S., sect. 5198.

If the bank had not authority to become the owner of commercial paper by purchase, it did not become liable to the plaintiff, nor could he successfully raise the question as to its want of power. *National Bank* v. *Whitney,* 103 U. S. 99.

*Mr. Clayton M. Parke, contra.*

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

It is contended, on behalf of the plaintiff in error, that the sections of the Revised Statutes in question were intended only to prevent national banks from violating the usury laws of the State in which they were severally organized and established; and that while, by the law of New York, it is usurious to loan or advance money to a party upon his own paper, or upon paper made for his accommodation, at a greater rate of interest or discount than seven per cent per annum, it is not usurious or illegal in that State for natural persons to acquire business paper, that is, paper valid in the hands of the holder, so that he might maintain an action thereon against the prior parties, at any rate of discount agreed upon between the parties to the negotiation, without limit in excess of seven per cent per annum.

It is assigned for error that the Court of Appeals negatived this proposition.

The rate of interest upon the loan or forbearance of money, established and in force by the laws of New York, was, at the time of the transactions in question, seven per cent per annum. Pt. 2, c. 4, tit. 3, 3 Rev. Stat. N. Y. 72, sect. 1.

By sect. 5 of the same act it is provided that all bonds, bills, notes, assurances, conveyances, all other contracts or securities whatever (except bottomry and respondentia bonds and contracts), &c., whereupon or whereby there shall be reserved or taken or secured, or agreed to be reserved or taken, any greater sum or greater value for the loan or forbearance of money, &c., than is above prescribed, shall be void.

It is, and long has been, the law in New York, as decided in

*Cram* v. *Hendricks* (7 Wend. (N. Y.) 569), that the transfer by the payee of a valid available note, upon which when due he might have maintained an action against the maker, and which he parts with at a discount beyond the legal rate of interest, is not an usurious transaction, although the payee on such transfer indorses the note; and on non-payment by the maker the indorsee may maintain an action against the indorser; but the sum which the indorsee in such case is entitled to recover of the indorser is the amount of the advance made by him, together with the interest thereon at the legal rate; while in an action against the maker the indorsee is entitled to the whole amount of the note.

This proceeds upon the idea that the original note is founded upon a valid consideration, free from usury in its inception; and that the indorsement and delivery contains two contracts: one, executed, which transferred the title, as upon a sale, as if indorsed without recourse; the other, executory, upon which the indorser is liable to the indorsee, to pay upon the default of the maker, after demand, and due notice thereof; although in the latter case, it will be observed, the recovery is limited by the New York decisions to the actual consideration paid, with lawful interest thereon.

The transaction is treated as a sale of the note, and no limits are fixed by law upon the price of the article sold; but so far as the liability of the vendor is concerned, in order to avoid the consequences of treating the advance of money, which constituted the consideration, as a loan, it is limited to a return thereof, with lawful interest.

The question we have now to determine is, whether, in transactions of this description, in which a national banking association is the transferee, the same view can be taken of the relations and rights of the parties, in the present case the Court of Appeals having decided that the same rule does not apply. *Johnson* v. *National Bank of Gloversville*, 74 N. Y. 329.

The very point had been previously raised and decided by that court in *Nash* v. *White's Bank of Buffalo* (68 id. 396), which was an action to recover penalties under the State law of 1870, in reference to banking institutions, for discounting paper

at a greater rate of interest than seven per cent per annum. That act, being chapter 163 of the Laws of New York of 1870, corresponds almost exactly with sects. 5197, 5198, of the Revised Statutes of the United States, now under consideration, and its declared intent is to place the banking associations of the State on an equality, in the particulars specified, with national banks under the sections referred to. It was held that the fact that the paper discounted was business paper, purchased by the defendant, did not constitute a defence; for the question was not whether it was an illegal transaction under the general statutes against usury, but whether it was within the terms of the prohibition which forbade banks from charging on any discount a rate greater than seven per cent per annum.

And in *Atlantic State Bank* v. *Savery* (82 N. Y. 291) it was decided that the purchase of a promissory note for a sum less than its face is a discount thereof, within the meaning of the provision of the banking act of that State (sect. 18, c. 260, Laws of 1838) which authorizes associations organized under it to discount bills and notes. And in support of that definition of the terms, the court cites the authority of MacLeod on Banking, 43, where the author says, "The difference between the price of the debt and the amount of the debt is called discount," and " to buy or purchase a debt is always in commerce termed to discount it."

In *Fleckner* v. *Bank of the United States* (8 Wheat. 338, 350), Mr. Justice Story said: " Nothing can be clearer than that, by the language of the commercial world and the settled practice of banks, a discount by a bank means, *ex vi termini*, a deduction or drawback made upon its advances or loans of money, upon negotiable paper or other evidences of debt, payable at a future day, which are transferred to the bank; " and he added, that if the transaction could properly be called a sale, " it is a purchase by way of discount."

Discount, as we have seen, is the difference between the price and the amount of the debt, the evidence of which is transferred. That difference represents interest charged, being at some rate, according to which the price paid, if invested until the maturity of the debt, will just produce its amount. And the advance, therefore, upon every note dis-

counted, without reference to its character as business or accommodation paper, is properly denominated a loan, for interest is predicable only of loans, being the price paid for the use of money.

The specific power given to national banks (Rev. Stat., sect. 5136) is "to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt." So that the discount of negotiable paper is the form according to which they are authorized to make their loans, and the terms "loans" and "discounts" are synonyms. It was so said in *Talmage* v. *Pell* (7 N. Y. 328); and in *Niagara County Bank* v. *Baker* (15 Ohio St. 68) the very point decided was that "to discount paper, as understood in the business of banking, is only a mode of loaning money with the right to take the interest allowed by law in advance."

But whether loans and discounts are identical, in the sense of sect. 5197, or not, is quite immaterial, for both are expressly made subject to the same rate of interest. And unquestionably the transfer of the notes, which forms the basis of this controversy, if not a loan, was a discount.

The contention of the plaintiff in error, that under this section whatever by the law of the State is lawful to natural persons in acquiring title to negotiable paper by discount is lawful for national banks, cannot be sustained, and derives no countenance, as is argued, from the decision in *Tiffany* v. *National Bank of Missouri*, 18 Wall. 409. All that was said in that case related to loans and to the rate of interest that was allowed thereon; and it was held that where by the laws of a State in which a national bank was located one-rate rate of interest was lawful for natural persons and a different one to State banks, the national bank was authorized to charge on its loans the higher of the two. The sole particular in which national banks are placed on an equality with natural persons is as to the *rate* of interest, and not as to the character of contracts they are authorized to make; and that rate thus ascertained is made applicable both to loans and discounts, if there be any difference between them. It is not intimated or implied that if, in any State, a natural person may discount paper, without

regard to any rate of interest fixed by law, the same privilege is given to national banks. The privilege only extends to charging some rate of interest, allowed to natural persons, which is fixed by the State law.

If it be said that the rate is allowed by the law of the State, when it permits the parties to reserve and receive whatever they may agree upon, then the section furnishes the conclusive answer, that " when no rate is fixed by the laws of the State, &c., the bank may take, receive, reserve, or charge a rate not ·exceeding seven per centum." So that the transaction in question, in either aspect, is within the prohibition of the statute, and subjects the bank to the penalties sued for.

The conclusion is confirmed by the provision which declares that " the purchase, discount, ·or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest." Here the purchase, discount, and sale of bills of exchange are classed as one, and subject to the same rule and rate of interest. In sect. 5198, the forbidden transaction for which the penalties are prescribed is spoken of as usurious; but this reference is to the prohibitions of the preceding section, and not to the laws of the State.

In the present case, the paper was transferred by an indorsement, imposing the ordinary liability upon the indorser. It may, perhaps, be distinguished from cases where the title to the paper is transferred by an indorsement without recourse, or by mere delivery. The advance in such cases, to the previous holder, of the agreed consideration can hardly be considered a loan, for the relation of debtor and creditor as between them is not created by the transaction, if made, as supposed, in good faith, and not as a cover for usury. Whether it be a discount, within the meaning of the sections we have considered, and therefore, subject to the same rule as to the rate of interest at which it may be discounted, which we have decided to be applicable to the transactions described in the present case; and if not, but is to be treated as a purchase of the paper, lawful at any proportion which the price paid bears to the amount

ultimately payable by the parties to it, whether, in that case, national banks are authorized by the law of their organization to acquire title to it in that way, are questions which do not arise in this case, and upon which we express no opinion.

*Judgment affirmed.*