DANFORTH *et al. v.* NATIONAL STATE BANK OF ELIZABETH.

(*Circuit Court of Appeals, Third Circuit.* November 18, 1891.)

1. NATIONAL BANKS—WHAT IS DISCOUNTING—USURY.

The purchase of accepted drafts by a national bank from the holder without his indorsement at a greater reduction than lawful interest on their face value is a discounting of those drafts, within the meaning of Rev. St. U. S. § 5197, which prohibits such bank from taking interest on any loan or discount made by it at a greater rate than is allowed by the laws of the state where it is situated.

2. SAME—FORFEITURE OF INTEREST—WHO MAY DEFEND.

The acceptor of the drafts so purchased may defend against the recovery of interest thereon by the bank, under section 5198, which provides that the taking of an unlawful rate of interest shall be deemed a forfeiture of the entire interest which the "bill or other evidence of debt carries with it;" for this provision destroys the interest-bearing power of the instrument.

3. SAME—PAYMENT—APPLICATION.

Where the acceptor of the drafts makes a payment to the bank without any direction as to its application, it cannot be applied to the forfeited interest, but must be credited on the face value of the drafts.

Error to the Circuit Court of the United States for the District of New Jersey.

Action by the National State Bank of Elizabeth against Waldo Danforth and Seth B. Ryder. The court directed a verdict for the plaintiff for the whole amount of its claim, and from the judgment thereon defendants bring error. Judgment reversed.

*A. S. Brown* and *James H. English*, for plaintiffs in error.

*R. V. Lindabury*, for defendant in error.

Before ACHESON, BUTLER, and WALES, JJ.

ACHESON, J. This action was brought by the National State Bank of Elizabeth, a national bank located in the state of New Jersey, against Waldo Danforth and Seth B. Ryder, executors of the last will of Edward G. Brown, deceased, to recover the amount of certain drafts and interest thereon. The material facts disclosed by the record are these: Brainard Bros. drew nine drafts, payable to the order of themselves, upon Edward G. Brown, who accepted the same. Afterwards, and before the maturity of the drafts, Brainard Bros. indorsed, and placed them in the hands of James W. Raynor, a broker in commercial paper, for sale, and the plaintiff bank bought the drafts from Raynor at a discount, at the rate of 15 per centum per annum for the length of time they had to run, paying to Raynor the face amount of the drafts, less the said discount. The bank did not know that Raynor was acting for Brainard Bros., or that the latter then owned the drafts. The legal rate of interest in the state of New Jersey was 6 per centum per annum. On April 5, 1889, Ryder, one of the executors of Brown, paid to the bank $2,500. Shortly before, the cashier of the bank had made a demand on Ryder for the interest on the drafts. Ryder consulted his counsel, who advised him not to pay the interest, but to make a check for even $2,500, which was something more than the interest would be, and give it to the bank. This Ryder did, handing the check to the cashier without saying any-

thing. He testified that his intention was to make a general payment. The cashier, without the consent or knowledge of Ryder, credited the $2,500 on account of interest. The defendants resisted the recovery of anything more than the amount of money advanced by the bank on the drafts, less the payment of $2,500, claiming that all interest was forfeited under the following provisions of the national banking law, (sections 5197, 5198, Rev. St.:)

"Sec. 5197. Any association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate allowed by the laws of the state, territory, or district where the bank is located, and no more; except that where, by the laws of any state, a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such state under this title. When no rate is fixed by the laws of the state, territory, or district, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run. And the purchase, discount, or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest.

"Sec. 5198. The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: provided such action is commenced within two years from the time the usurious transaction occurred."

The court below overruled the defense, assigning as reasons for so doing the following:

"*First.* That the transaction was not usurious, there being a difference between discount and purchase.

"*Second.* That the payment made by Ryder upon the indebtedness was either a distinct payment upon interest, or, if a payment generally, must be by law credited upon the interest account in this transaction.

"*Third.* That, if the transaction was usurious as to Brainard Bros., the drawers of the drafts, that does not relieve the defendants from liability to pay the full amount."

—And by direction of the court the jury rendered a verdict for the plaintiff for the whole amount of its claim, namely, the sum of $13,-654.44, and judgment therefor was entered.

We are now to determine whether these rulings were correct. Undoubtedly, the suggested distinction between discount and purchase has been judicially recognized as existing under state usury laws, and it has been held that, without infraction of those laws, a promissory note or draft, valid in its inception, and originally free from usury, may be purchased from the holder at any agreed price, without regard to the

rate of interest fixed by law.    But such decisions are not applicable here. *Bank* v. *Johnson*, 104 U. S. 271.    It was there held that, so far as loans and discounts are concerned, "the sole particular in which national banks are placed on an equality with natural persons is as to the rate of interest, and not as to the character of contracts they are authorized to make."    In that case a national bank, located in the state of New York, acquired from the payee certain promissory notes, business paper, and valid for the full amount in his hands, at a deduction exceeding the lawful rate of interest, and the notes were transferred to the bank by the indorsement of the payee, imposing upon him the ordinary liability of an indorser.    By the law of the state of New York it was not usurious or unlawful for natural persons thus to acquire business paper, the transfer being treated as a sale.    But the supreme court of the United States adjudged that the transaction was a discount by the bank, and was within the prohibition and penalty of sections 5197 and 5198 of the Revised Statutes.    Now the only distinction between that case and the case in hand is that here the bill-broker who negotiated with the bank, and who was the ostensible owner of the drafts, transferred them to the bank by mere delivery, without his own indorsement.    Does this circumstance so distinguish the two cases as to justify the conclusion of the court below that the transaction in question was not a discount, within the meaning of the sections above quoted?

In *Fleckner* v. *Bank*, 8 Wheat. 338, 350, the supreme court of the United States, speaking by Judge STORY, said:

"Nothing can be clearer than that by the language of the commercial world, and the settled practice of banks, a discount by a bank means, *ex vi termini*, a deduction or drawback made upon its advances or loans of money upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank."

—And it was added that, if the transaction there was a purchase, it was "a purchase by way of discount."    It will be perceived that the above definition of discount embraces as well a transaction where money is advanced upon paper transferred to a bank without the indorsement of the previous holder, as the case of a strict loan thereon, where the relation of debtor and creditor is created.    Mr. Justice MATTHEWS, in *Bank* v. *Johnson*, *supra*, tersely defined "discount" as "the difference between the price and the amount of the debt, the evidence of which is transferred."    In *Tracy* v. *Talmage*, 18 Barb. 456, 462, the court said: "Now to 'discount' includes to buy; for discounting, in most cases, is but another term for 'buying at a discount;'" and this proposition the court of appeals of New York cited with approval in *Bank* v. *Savery*, 82 N. Y. 291, 302.    In *Bank* v. *Baker*, 15 Ohio St. 68, 85, the court declared:

"It is also undeniably clear that the term 'discount,' when used in a general sense, is equally applicable to either business or accommodation paper, and is appropriately applied either to loans or sales by way of discount, when a sum is counted off or taken from the face or amount of the paper, at the time the money is advanced upon it, whether that sum is taken for interest upon a loan, or as the price agreed upon a sale."

In *Pape* v. *Bank*, 20 Kan. 440, 451, the court said: "And the term 'discounting' includes purchase, as well as loan." It is worthy of observation that the opinion of the supreme court of Kansas in that case was delivered by Judge BREWER, now an associate justice of the supreme court of the United States. In *Bank* v. *Sherburne*, 14 Ill. App. 566, the court expressed the opinion that "a purchase may be made by way of discount equally as well as a loan may be made by way of discount." This question was before the court of appeals of the state of New York in *Bank* v. *Savery*, *supra*, where the facts were substantially the same as they are here. There a negotiable promissory note, duly indorsed, was delivered by the holder to a firm of brokers, to whom he was indebted, with directions to sell the note, and apply the proceeds on that indebtedness. They accordingly sold and delivered the note to the bank, without their own indorsement upon it, at a greater rate of reduction than lawful interest. The court of appeals held that this was a discount within the meaning of the state act, which authorizes associations organized under it "to carry on the business of banking by discounting bills, notes, and other evidences of debt."

Upon the score, then, of judicial authority, the conclusion is well warranted that, in the business of banking, "discount," in the ordinary acceptance of the term, includes what is called "purchase." We find nothing in the national banking law to suggest that congress used the word in any other than its usual commercial sense, or intended to make the distinction between discount and purchase insisted on by the defendant in error. But, upon the face of the statute, there are, we think, decisive indications to the contrary. All the powers national banks have to deal in negotiable paper and other evidences of debt are conferred by section 5136 of the Revised Statutes. The grant of power is this:

"To exercise * * * all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; * * * by buying and selling exchange, coin, and bullion; by loaning money on personal security."

Now, clearly, no authority is hereby given to national banks to acquire notes, drafts, etc., otherwise than by way of discount. The term "negotiating," as here used, does not enlarge the power of acquisition, but concerns the disposal by a bank of the notes, etc., it may have acquired, and authorizes the transfer thereof by the bank. 1 Morse, Banks, § 73, p. 156. If, then, there is any essential difference between discount and purchase, it is plain that a national bank cannot lawfully take title to paper by purchase, for, where there is no grant of power to these banking associations to do an act, a prohibition against the exercise of the power is implied. *First Nat. Bank* v. *National Exchange Bank*, 92 U. S. 122. Then observe the power of "discounting" promissory notes, drafts, etc., is conferred by the same paragraph which authorizes "buying" exchange, coin, and bullion. The statute thus evinces great care and nice discrimination in the use of words. Again, turning to the concluding clause of section 5197, we find it there declared that—

"The purchase, discount, or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount, or sale, at not more than the current rate of exchange for sight-drafts, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest."

The obvious deduction is that but for this saving clause the described purchase would have come within the previous limitation as to the rate of interest on loans and discounts. Then, too, as Judge MATTHEWS pointed out in *Bank* v. *Johnson, supra,* "here the purchase, discount, and sale of bills of exchange are classed as one, and subject to the same rule and rate of discount." Page 278.

It is incredible that, while the statute carefully restricts the rate of interest upon loans and discounts, it was intended that national banks should have the right to buy commercial paper at any agreed price, without respect to the usury laws. This, in effect, would be to relieve these institutions from all limitation on the right to charge interest whenever the transfer takes on the form of a purchase, and is so denominated.

We are then constrained to differ with the court below as to the nature of this transaction, and to hold that the bank acquired the drafts sued on by discount, or by purchase by way of discount, which substantially are one and the same thing.

But it is contended that, even if the transaction between Brainard Bros. or their broker, Raynor, and the bank was usurious, the forfeiture prescribed by the statute is not an available defense to the executors of Brown, the acceptor of the drafts; and so the court below held. But this view, in our judgment, is against the words of the statute, and defeats the legislative intention. The language of the act is plain:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon."

The forfeiture here denounced attaches to the instrument itself, and the consequence inheres in it. As it carries no interest, how can any interest thereon be recoverable? The clause operates directly upon the bank, and affects its power. The statutory franchise to recover interest is lost by the commission of the illegal act. Being without right to demand interest, the offending bank cannot recover interest from any one. The right to defend is not made a personal one; and herein, it will be perceived, there is a marked difference between this provision of the law and the one immediately succeeding, which gives a particular remedy to the person by whom the excessive interest has been paid. We are therefore of the opinion that the plaintiffs in error may defend under the forfeiture clause of the act.

We are aware that this conclusion is at variance with the ruling of the supreme court of Ohio in *Smith* v. *Bank*, 26 Ohio St. 141, and of the supreme court of New Jersey in *Bank* v. *Littell*, 47 N. J. Law, 233; but we are in accord with the decision of the supreme court of Pennsylvania in *Guthrie* v. *Reid*, 107 Pa. St. 251. There, the objection being made

that the maker of a note discounted by a national bank (the equitable plaintiff) for the payee at a usurious rate of interest could not defend because the illegal interest had been paid by the payee, the court declared: "The answer to this is that the bank, by its act, has destroyed the interest-bearing power of the note, and can recover no interest upon it from anybody."

We are brought now to the consideration of the question how far a valid defense exists to the claim in suit. It was settled by the case of *Barnet* v. *Bank*, 98 U. S. 555, that, where unlawful interest has been paid to a national bank, it cannot be used by way of set-off or payment in a suit by the bank on the bill, note, or draft. This principle is applicable here, so far as relates to the usurious interest taken by the defendant in error in its transaction with Raynor. It is true the illegal interest was not here paid to the bank in money, but it was paid in what was the equivalent. Raynor was the apparent owner of drafts good in his hands for their face amount as against all the parties to the paper, and which, indeed, in the hands of Brainard Bros., themselves, were thus good as against the acceptor. Therefore, the transfer of the drafts to the bank operated as a payment of the amount charged for discount. This point was expressly so ruled by the court of appeals of New York in *Nash* v. *Bank*, 68 N. Y. 396, which was an action to recover penalties under a state act identical, as regards the taking of interest, with the national banking law. The same ruling was also made by the court of errors and appeals of New Jersey in *Bank* v. *Carpenter*, 52 N. J. Law, 165, 19 Atl. Rep. 181, which was a suit for a penalty under section 5198, Rev. St. To the extent of the face amount of the drafts, then, the bank had an enforceable claim.

But we are clear that no interest upon the drafts after their maturity was recoverable. The statutory forfeiture is not of part of the interest, but all of it. "The entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon," is comprehensive language. It would be difficult to employ broader terms. The legislative intent, we think, was utterly to destroy the interest-bearing capacity of the instrument. The interdiction of a recovery of interest by the transgressing bank is salutary, and full effect should be given to it. These views have prevailed in the courts. In *Bank* v. *Stauffer*, 1 Fed. Rep. 187, (Cir. Ct. W. D. Pa.,) a national bank upon the discount of a note had charged and received more than the legal rate of interest between the date and maturity of the note, and the question there, as here, was whether this subjected the bank to a forfeiture of the interest which otherwise would have accrued upon the note after its maturity. Judge McKennan held that it did, and that nothing could be recovered but the face amount of the note. The same point arose in *Bank* v. *Childs*, 133 Mass. 248, and the supreme court of Massachusetts ruled that, while illegal interest paid to the bank upon the discount of a note could not be set-off in a suit brought on it, yet the bank was entitled to recover only the face of the note, without interest. So, too, in *Alves* v. *Bank*, 3 Browne, Nat. Bankr. Cas. 452, the court of ap-

peals of Kentucky decided that by receiving a greater rate of interest than was lawful the bank forfeited all interest accruing by law upon the discounted note after its maturity. This was also adjudged by the supreme court of Pennsylvania in *Guthrie v. Reid, supra.* The court there said:

"It is settled law that where a national bank takes, receives, or charges more than the legal rate of interest in the discount of a note, the interest-bearing power of the note is destroyed; and, when once so destroyed, it remains so. The taint of usury clings to it until paid. It is a dead note thereafter, so far as interest is concerned."

It only remains for us to consider the question of the application of the payment of $2,500. We have carefully examined the evidence, and are of the opinion that it was not sufficient to warrant a finding that the payment was made specifically on account of interest. The burden of showing this was upon the bank, especially in view of the circumstances of the case. No interest was legally demandable. Besides, Ryder was acting in a representative capacity, and he had no right to appropriate the funds of the estate of the decedent, Brown, to forfeited interest. Certainly, he made no express application of the money to interest, and such an application by him is not to be lightly inferred, but should be satisfactorily proved. The cashier of the bank himself testified that when Ryder handed him the check "he did not say it was for interest," but "went right away without saying anything." Under the evidence, it must be regarded as having been a general payment; and, if it was that, then clearly it was not competent for the bank to apply it to forfeited interest,—to a claim which had no legal existence. *Adams* v. *Mahnken,* 41 N. J. Eq. 332, 7 Atl. Rep. 435, (N. J. Err. & App.;) *Greene* v. *Tyler,* 39 Pa. St. 361. The law will appropriate the payment to the principal of the drafts.

Under the evidence, the jury should have been instructed to render a verdict for the plaintiff below for the face amount of the drafts, less the payment of $2,500, without interest.

The judgment is reversed, and the case is remanded to the circuit court, with a direction to award a new trial.