## BISHOP & CO., Inc., v. MIDLAND BANK.

### No. 7795.

Circuit Court of Appeals, Ninth Circuit.
June 22, 1936.

As Modified on Denial of Rehearing
Aug. 17, 1936.

John A. Powell and Louis W. Myers, both of Los Angeles, Cal. (O'Melveny, Tuller & Myers, of Los Angeles, Cal., of counsel), for appellant.

Clarence M. Hanson, of Los Angeles, Cal. (Freston & Files, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment founded upon an order sustaining a demurrer to the plaintiff's second amended complaint, without leave to amend.

The facts, as disclosed by the second amended complaint, are as follows:

The appellant, affiliated with the National Biscuit Company, a corporation, through various brokers, had been doing business with Forwood & Sellar, Limited, of Liverpool, England, for nearly eighteen years. On August 19, 1932, the plaintiff, acting under the name of its affiliated company, the National Biscuit Company, ordered 500 bags of fair fermented old main crop Accra cocoa beans from Forwood & Sellar, Limited, and delivered its order to the broker, Dudley-Ruth Company. The order, on the form of the National Biscuit Company, recited the quantity, quality, and price; the terms, "Draft attached to shipping documents required." On the face of said order appeared the words: "This order is subject to conditions shown on the back hereof." On the reverse side of the order form the conditions included:

"4. If you do not make shipment within the time agreed upon, or if any material delivered is not entirely satisfactory to us

for the purposes for which it is required we may cancel any part or all of this order and return the unsatisfactory material at your expense. Our decision upon this point shall be binding upon you.

"5. All products furnished shall be free from adulteration and comply with all Food and other Laws and Regulations. * * * .

"8. The acceptance of this order implies acceptance of the above conditions."

Letter of confirmation was sent to plaintiff on the day following, reciting the quantity and description of goods and the price. It concluded, "Payment:—Nettcash against documents. All questions arising under this contract to be settled by arbitration in Liverpool."

The complaint then alleges (paragraph V): "That following the sending of this purported confirmation of the order communicated by the plaintiff said Forwood & Sellar, Ltd., drew a draft or bill of exchange for the price of the shipment called for by said order and attached to said draft a bill of lading representing the property in said cocoa beans. That said draft with the bill of lading attached was sold to the defendant [appellee here] by said Forwood & Sellar, Ltd. That the transaction comprehending said sale was an outright purchase of said draft and of said bill of lading without right to charge back against the account of said Forwood & Sellar, Ltd., and was not an ordinary discount transaction. That the proceeds of said draft and the bill of lading and by virtue thereof the said cocoa beans themselves became the lawful property of the defendant and that no other person, firm or corporation retained any interest, either legal or equitable, in said cocoa beans. That said defendant at the time of purchasing said draft with said bill of lading attached knew the general purposes for which said cocoa beans were required and knew that the plaintiff relied upon its skill and judgment. That immediately upon receipt of said draft and said bill of lading defendant bank transmitted the same to its agent for collection purposes, to-wit, Bank of America National Trust & Savings Association, Los Angeles Main Office, Seventh and Spring Streets, Los Angeles, California."

Then follow the allegations that the 500 bags of cocoa beans arrived at Los Angeles on October 5, 1932; that the draft with bill of lading attached was received by the Bank of America, which notified the plaintiff; that plaintiff delivered to the bank its check for $3,263.96, and obtained the bill of lading; that when plaintiff endeavored to take possession of the cocoa beans it was discovered that the entire lot had been rejected by the United States Department of Agriculture, which ordered destruction or deportation of said cocoa beans; and that said cocoa beans were in fact unfit for human consumption.

The next paragraph states that the National Biscuit Company, on behalf of plaintiff (appellant), brought an action against Forwood & Sellar, Limited, in the superior court of the state of California for the purpose of recovering damages based upon its payment against sight drafts for 1,100 bags of cocoa beans mentioned and described in the first and second causes of action; that a writ of garnishment was issued to garnish all moneys, credits, and debts due or owing from the Bank of America to the defendant in said action; that said action was dismissed without prejudice after plaintiff therein had ascertained that the state court would have no jurisdiction because the officers of the Bank of America intended to remit the money to defendant unless a new action was brought against the present appellee; that this was because Forwood & Sellar, Limited, had no interest, legal or equitable, in said bill of lading or in said cocoa beans represented thereby; "That this decision of said officers was made only after they were furnished with a sworn statement and other evidence presented by the defendant herein to establish the fact of its absolute ownership of said bill of lading and of the cocoa beans represented thereby and also the fact that said Forwood & Sellar, Ltd., had no interest, legal or equitable, in said bill of lading or in said cocoa beans represented thereby"; "That thereafter the plaintiff, after time of the payment of a draft for $6,905.34, caused the Sheriff of said County of Los Angeles to garnish the proceeds of its own check in the hands of said Bank of America National Trust & Savings Association by writ of attachment or of garnishment which issued out of this action and that subsequently the proceeds of plaintiff's own check for $7,082.77 were garnished in the companion case to the above entitled case, which bears No. 351,604 of said Superior Court, * * * and No. 5507–H of the above entitled court and the same caption

as the above entitled case. That the purpose of these writs of garnishment was to secure the plaintiff for its claim against the defendant bank which had previously admitted in effect that it was the owner of said bill of lading and of the cocoa beans represented thereby."

By the following paragraph it is alleged that under the circumstances of the case the negotiation of the bill of lading by defendant to its agent implied a warranty that the said cocoa beans were merchantable and fit for human consumption, upon which plaintiff relied; that plaintiff notified defendant of the rejection of said beans, rescinded the sale, and demanded return of the purchase price, offering to return said cocoa beans.

It was further alleged that several efforts had been made by plaintiff to secure reconsideration of the Department of Agriculture of the rejection of said cocoa beans, but that after reconsideration the rejection was confirmed.

It was also alleged that after refusal of defendant to repay the purchase price the beans were sold for use in England at a price much below that which plaintiff had paid.

The second cause of action relates to an order for 600 bags of the same kind of cocoa beans and incorporates most of the paragraphs of the first cause of action; the same situation existing as to the first count.

A third cause of action was set out, this one on an order for 2,000 bags of cocoa beans, a shipment of 1,000 bags of which was passed by the Department of Agriculture. The other shipment on this order was examined and 83 bags passed and 917 rejected.

The fourth cause of action is for damages, and covers expenses incurred by plaintiff.

Plaintiff prayed judgment for the sum of $8,031.87, with interest.

Appellant's assignment of errors in the record sets out the contention "that the Learned Court erred in sustaining the defendant's demurrer to the second amended complaint on file herein." The argument in its brief is prefaced by the following: "A bank which becomes the outright purchaser of a draft representing the purchase price of goods sold and a bill of lading for the same goods becomes the absolute owner of the draft, bill of lading and goods and on transferring the bill of lading and goods to the original purchaser thereof, becomes liable to such purchaser for full performance of the contract of purchase of the goods."

We quote again from appellant's brief, wherein it says:

"That the outcome of this appeal must turn upon a question of fact which may be stated as follows:

"What was the legal character of the transaction whereby Forwood & Sellar, Limited, transferred the sight draft and bill of lading to the defendant bank? Was it a transaction of sale and purchase whereby Forwood & Sellar, Ltd., sold the sight draft and bill of lading to the bank or was it a transaction of 'discount' whereby the bank extended credit to Forwood & Sellar, Limited, upon their sight draft receiving an assignment of the bill of lading as security for the payment of the draft? If it was the former the bank thereby became the owner of the sight draft, the bill of lading and the merchandise represented thereby, with the result that upon the transfer of the sight draft and bill of lading to plaintiff the bank became bound by the implied warranties set forth in section 34, supra [Federal Bill of Lading Act, 39 Stat. 543, 49 U.S.C.A. § 114], and the judgment herein should be reversed. If upon the other hand the transaction was merely one of 'discount' whereby the bank took the bill of lading merely as security for the payment of the draft, no warranties were implied by its transfer of the bill of lading to plaintiff, and the judgment herein should be affirmed."

■ The demurrer to the second amended complaint having been sustained, the case comes before us on the primary record. For the purposes of demurrer, the well-pleaded facts are taken as true; but conclusions of the pleader, not being well-pleaded ultimate facts, are not held against the party interposing the demurrer, but are disregarded. St. Louis, K. & S. E. Railroad v. U. S., 267 U.S. 346, 349, 45 S.Ct. 245, 69 L.Ed. 649; Interstate Commerce Comm. v. Goodrich Transit Co., 224 U.S. 194, 204, 32 S.Ct. 436, 56 L.Ed. 729; Equitable Life Assurance Soc. v. Brown, 213 U.S. 25, 43, 29 S.Ct. 404, 53 L.Ed. 682; Interstate Land Co. v. Maxwell Land Co., 139 U.S. 569, 577, 578, 11 S.Ct. 656, 35 L. Ed. 278.

■ It is elementary that a bank which discounts a draft or bill of exchange with bill of lading attached does not assume, in the ordinary course of business, to warrant the genuineness of the bill or the quality or quantity of the goods therein described. Munson v. De Tamble Motors Co. et al., 88 Conn. 415, 91 A. 531, 532, L.R.A.1915A, 881, said: "In such a case the law is almost universal that: 'A bank which discounts a draft with bill of lading attached is not, in the absence of bad faith, answerable to the drawee for the performance of the consignor's contract.' Hawkins v. Alfalfa Products Co., 152 Ky. 152, 153 S.W. 201, 44 L.R.A.(N.S.) 600." See Williams v. Nat. Fruit Exchange et al. [95 Conn. 300], 111 A. 197, 199. See, also, Bank of Italy v. Colla, 118 Ohio St. 459, 161 N.E. 330, 333, where the court said: "A bank is not authorized to deal in merchandise, nor to sell goods, and the mere fact that a bank in purchasing drafts with bills of lading attached does secure a certain limited property in the goods covered by the bill of lading does not render it responsible as if it were the seller upon the contract."

Therefore, unless appellant has alleged ultimate facts which bring his case out of the general rule with regard to discount transactions, he has made out no case against defendant, and the judgment of the lower court must be affirmed.

Section 34 of the Federal Bill of Lading Act (49 U.S.C.A. § 114), supra, reads as follows: "A person who negotiates or transfers for value a bill by indorsement or delivery, unless a contrary intention appears, warrants—(a) That the bill is genuine; (b) That he has a legal right to transfer it; (c) That he has knowledge of no fact which would impair the validity or worth of the bill; (d) That he has a right to transfer the title to the goods, and that the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied if the contract of the parties had been to transfer without a bill the goods represented thereby." And section 36 (39 Stat. 544, 49 U. S.C.A. § 116) reads: "A mortgagee or pledgee or other holder of a bill for security who in good faith demands or receives payment of the debt for which such bill is security, whether from a party to a draft drawn for such debt or from any other person, shall not be deemed by so doing to represent or warrant the genuineness of such bill or the quantity or quality of the goods therein described."

It has been held, under these two sections, that a bank which discounts a draft or bill of exchange with bill of lading attached, in the ordinary course of business, is not liable for breach of contract on the part of the seller respecting the quality of the goods purchased. Bank of Italy v. Colla, supra. Discounting of trade paper with bill of lading attached is apparently regarded as a security transaction. In the instant case, however, appellant sought to plead a case out of the ordinary course of business, and not an ordinary discount transaction.

■ We turn to consider paragraph V of the complaint, above quoted, which is the basic paragraph stating plaintiff's cause of action. The vital fact alleged in this paragraph is: "That said draft with the bill of lading attached was sold to the defendant by said Forwood & Sellar, Ltd." Now this, without more, might be construed to mean, as defendant contends, "discounted." See Danforth v. National State Bank of Elizabeth, 48 F. 271, 274, 17 L.R.A. 622 (C.C.A.3); Morris v. Third Nat. Bank of Springfield, Mass., 142 F. 25, 31 (C.C.A.8); National Bank v. Johnson, 104 U.S. 271, 276, 26 L.Ed. 742. Further, this is followed by other allegations, concerning which the appellant, in its brief, says: "We concede that the phrase 'with [out] the right to charge against the account of said Forwood & Sellar, Ltd.,' is a legal conclusion. We think that probably the next following allegation, to-wit: 'that the proceeds of said draft and the bill of lading and by virtue thereof the said cocoa beans themselves became the lawful property of the defendant and no other person, firm or corporation retained any interest, legal or equitable, in said cocoa beans' is likewise a statement of legal conclusions."

Thus, by appellant's concession, certain allegations are eliminated from consideration. The eliminated portions may be treated as surplusage. The general rule, with which we are in accord, being that surplusage does not vitiate a pleading, but that the unnecessary matter, in the absence of a motion to strike, may be disregarded and the pleading viewed as though the matter was not included therein. Brown v. Crown Gold Milling Company, 150 Cal. 376, 382, 89 P. 86.

In examining a pleading to ascertain whether or not it states a cause of action against the defendant, the entire pleading must be studied and all parts must be taken into consideration; it must not be made to stand or fall upon isolated portions thereof. "A pleading must be construed as an entirety, including the caption, and a count must be construed as a whole. Effect should be given to every part of the pleading, and all parts will, if the language permits, be so construed as to be consistent with each other." 49 C.J. 116, § 108.

It has been held that to plead that a party consummated a sale is not to plead a conclusion (49 C.J. 52, § 21); and that " 'Bargained and sold' avers a sale; but the words, 'sold, assigned and transferred, and discounted' do not aver a barter and sale, but only a transfer by discounting." 49 C.J. 122, § 120. Plaintiff stated that the "sale" was not an ordinary discount transaction. It is not readily apparent how else that fact could have been pleaded, but the meaning of plaintiff is clear and understandable.

In paragraph VII, the pleader, after alleging the filing of an action by its parent company in its behalf against Forwood and Sellar and the subsequent dismissal of that action and the reason for the dismissal, averred: "That this decision of said officers [of the Bank of America to return the funds to defendant here] was made only after they were furnished with a sworn statement and other evidence presented by defendant herein to establish the fact of its absolute ownership of said bill of lading and of the cocoa beans represented thereby and also the fact that said Forwood & Sellar, Ltd., had no interest, legal or equitable, in said bill of lading or in said cocoa beans represented thereby." Even if some of these allegations are of evidentiary matter, they are coupled with the allegation of outright sale, and altogether they sufficiently state the fact that the transaction was not an ordinary discount transaction, but an actual sale.

This is not a case where the pleader has refused to amend after demurrer sustained, where the ambiguities and uncertainties found in the pleading are construed against the pleader (McIntyre v. Hauser, 131 Cal. 11, 63 P. 69); but one where the demurrer was sustained without leave to amend.

Bancroft's Code Pleading, vol. 1, p. 269, § 155, says: "All that is required of a plaintiff, even as against a special demurrer, is that he set forth in his complaint the essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source and extent of his cause of action." See, also, Goldstein v. Healy, 187 Cal. 206, 201 P. 462.

Taking the complaint as a whole and giving to it a reasonable construction, we are of opinion, without indorsing the language or form thereof, that it states the essential facts of plaintiff's case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source, and extent of the cause of action. The demurrer should not have been sustained.

Judgment reversed.