W. E. DANIEL and E. A. DILLARD, Appellants,

v.

The FIRST NATIONAL BANK OF BIRMINGHAM, Appellee.

No. 15583.

United States Court of Appeals Fifth Circuit.

Jan. 17, 1956.

For original opinion, see 227 F.2d 353.

Clifford J. Durr, W. Ervin James, Montgomery, Ala., for appellants.

Lucien D. Gardner, Jr., Birmingham, Ala., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

At appellee's request, we make clear that it was the district court's findings of ultimate fact [1] which we thought

---

1. Set forth in the Dillard case in paragraphs 5 and 7 of the "Findings of Fact":

"5. The purchase by plaintiff of said tractor and the execution by him of said Conditional Sale Contract was a bona fide transaction by which plaintiff purchased said tractor on credit from said Baggett Transportation Company, and was not a loan by Baggett Transportation Company to plaintiff, nor a sham or device to evade the usury laws; and the time or credit price stated in said Contract was the bona fide price at which said Baggett Transportation Company sold and the plaintiff purchased said tractor.

\*    \*    \*    \*    \*    \*

subject to review under the authorities collected in Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, 219, free from the restraint of the "clearly erroneous" rule. Appellee argues with much force that those findings resulted from inferences drawn by the district court as to the intention of the parties, and not from any "process of legal reasoning". We do not agree, though the separation is difficult, and if we are mistaken in that respect, nevertheless, the evidentiary facts being without dispute, this Court is in substantially as good position as was the district court to draw inferences and conclusions therefrom. See authorities cited in Benton v. Commissioner of Internal Revenue, 5 Cir., 197 F.2d 745, 753. In any event, on the entire evidence we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746.

Upon original consideration, we said that,

> "The evidence leaves us in no doubt that there was never any bona fide 'time price' in any one of the three contracts, but that the real transaction was a sale at a cash price accompanied by a loan or extension of credit to which the Bank was privy throughout."

■ In so stating, we did not intend what appellee thinks, viz.: to "collapse the transaction as if it were one initial, sole, and direct transaction between the purchaser and the bank", though that result might have been reached in the Dillard case. We consider the conditional sales contracts between the sellers and the purchasers of the motor vehicles and the assignments to the Bank as separate but connected transactions, which were not traced out in detail because it seemed too clear that the Bank could not claim to be an innocent purchaser for value of the notes and contracts for either of two reasons: (1) The usurious charges were made in accordance with its instructions,[2] and it had actual notice thereof. See Associates Inv. Co. v. Baker, Tex. Civ.App., 221 S.W.2d 363. (2) The Bank's admitted violation of the law in purchasing the paper at a usurious discount placed it on inquiry as to whether the transaction between seller and purchaser of the vehicle also contained usury. See 8 Am.Jur., Bills and Notes, § 384; 10 C.J.S., Bills and Notes, §§ 303, 327. The taint of usury entering into the indebtedness persisted after the usurious transfer to the Bank, and the usurious interest was in fact paid by the appellants directly to the Bank.

■ The appellee Bank insists that the evidence does not sustain our findings, and the amicus curiae requests that we clarify our opinion as regards its impact upon installment paper discounting generally. We can, of course, decide only the cases before us on their own facts, though we recognize that these are test cases important to the parties, but probably more important as precedents, applicable to many other transactions which may vary in non-essential details. Accordingly, we repeat some of the indicia which influence us to hold that these sales were at a cash price combined

---

"7. The purchase of the Conditional Sale Contract by the defendant from Baggett Transportation Company was a bona fide purchase of the Contract and was not a loan by the defendant to Baggett Transportation Company or to the plaintiff; and said purchase was made by the defendant in good faith and was not a sham or device to evade the usury laws. The discount upon the purchase of the Contract from Baggett Transportation Company was a purchase discount and not an interest discount. The purchase of said Conditional Sale Contract by the defendant did not increase the amount which the plaintiff was obligated to and would have been required to pay to Baggett Transportation Company had that Company retained the Contract."

2. True, the testimony of the Bank's assistant vice-president quoted in our original opinion related to help in computing the time price specifically in the Dillard transaction, but that was one of the "first half dozen sales", clearly intended as training of the seller's employees for use in subsequent transactions.

**806**

with a loan or extension of credit as distinguished from a bona fide time price: (1) a standard product, a motor vehicle, having a known and definite market price advertised and quoted only as a cash price and not separately as a cash price and a time price; (2) the only price mentioned, except in the final papers, being a cash price and no time price being actually agreed on; (3) the erroneous quoting to the purchaser of interest at 5% within the legal rate; (4) the so-called time price being calculated on the cash price by adding thereto insurance, recording fees and interest or discount; (5) the clear separation from the beginning of the purchase price intended to go to the seller of the vehicle from the interest or discount intended to go to the Bank. The fact that the seller could have changed its mind and kept the papers itself, or could have assigned them to some other financial institution, seems to us to make little or no difference, except to substitute a different lender of credit. Nor is the furnishing of forms and instructions a sine qua non, but simply one of the circumstances going to show the intention of the parties.

From the way the so-called time price was calculated, it is clear that a part of the increase over the cash price was intended to provide for insurance and recording fees. The remaining difference could not be intended to provide against those extraordinary risks which were insured at the expense of the purchaser. Some of the risk of collection is compensated for by varying the rate of interest within legal limits to cover such risk. Under the evidence in these cases, it seems to us that the part of the addition to the cash price in excess of the insurance charges and recording fees could be meant for nothing except compensation for the use or detention of the amount for which credit is extended, and is thus within the classic definition of interest.[3]

The appellee Bank asks that we determine what rate of interest was received or reserved by the Bank in the Daniel case. Since we have held that the Bank had notice of the usurious charges, we think that it is entitled to no credit because of the fact that it deposited a portion thereof to the credit of the seller of the vehicle. Under the statute (12 U.S.C.A. § 86, supra, footnote 1 to the original opinion 227 F.2d 354), the person by whom the usurious interest is paid may recover back twice the amount thereof from the association taking or receiving the same. To recover there must be proof both of payment by the appellants and receipt by the Bank. It is enough, we think, if the Bank receives part of the usurious interest for its own benefit, and, knowing it to be usurious, collects a part for its assignor.

The amicus curiae, Alabama Banker's Association, rather plaintively inquires:

"If the Court should be willing to do no more than to indicate how the function of discounting paper can escape the hazard of factual uncertainty and highly technical minutiae to escape attack, it would be of great service and might indeed tend to avoid a panic retrenchment in installment paper discounting."

It seems to us that a Bank not itself guilty of charging or of knowingly collecting usurious interest or discount would not have violated the statute (12 U.S.C.A. § 86, supra, footnote 1 to the original opinion). Except as changed by that statute, the Bank's position as a holder in due course, vel non, would be determined upon the principles of the negotiable instruments law, the same as any other financial institution.

The appellee Bank admits that it charged usurious discounts contrary to the federal statute. See 12 U.S.C.A. § 85 (footnote 1 to original opinion); Gloversville National Bank v. Johnson,

---

3. "Interest is the compensation allowed by law, or fixed by the parties, for the use or detention of money." New Am-sterdam Casualty Co. v. W. T. Taylor Const. Co., 5 Cir., 21 F.2d 1002, 1003.

14 Otto 271, 104 U.S. 271, 26 L.Ed. 742. It insists, however, that it was pursuing a usual and customary business practice. Whether so or not, it is a practice which it must concede that a National Bank can safely engage in only so long as it can rely on its assignor not to sue under the federal statute.[4] Probably such reliance is justified if its assignor has passed on the usurious interest rate to the purchaser of the vehicle. No doubt the Bank views its legal status from a position different from that of this Court. It seems to us that in reality what the Bank is asking this Court to hold is that probably the most numerous class of persons in need of protection from the state and national laws against usury are removed from that protection by the simple expedient of using the term "time price" as a cloak to conceal usury. That, we of course will not do. The petition for rehearing is

Denied.

JONES, Circuit Judge.

I dissent.

---

4. That, rather than the present holding, seems to us to be the real disadvantage under which the Bank labors in competing with state financial institutions in this practice.