Hall v. Keller.

---

HERBERT F. HALL *et al.* v. L. F. KELLER *et al.*
No. 12,510. ( 67 Pac. 518.)

SYLLABUS BY THE COURT.

TITLE AND OWNERSHIP— *Consignment of Grain — Liability for Damages.* A consignor of grain which was delivered to a railway company for shipment drew a draft on consignees, and attached thereto bills of lading issued to him by the carrier. The draft was indorsed and delivered by the payees, together with the bills of lading, to a bank which paid to them the amount of it. The drawees accepted and paid the draft. *Held,* that neither the bank nor the payees were liable to the consignees of the grain (the drawees) for a failure of title in the drawer of the draft to the property shipped.

Error from Marion district court; O. L. MOORE, judge. Opinion filed January 11, 1902. *In banc.* Affirmed.

*R. L. King, Thomas O. Kelley*, and *Karnes, New, Hall & Krauthoff,* for plaintiffs in error.

*Keller & Dean,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.: This was an action brought by the firm of Hall & Robinson against Keller & Dean and the First National Bank of Marion, to recover the sum of $666 and interest. The facts in the case may be stated briefly: Keller & Dean, a firm of lawyers in Marion, brought several actions for different clients against a farmer in Marion county, and levied writs of attachment on about 2000 bushels of corn. The writs were served by one Jacob Konrath, a constable. While he had the corn in his possession, it was agreed between the parties to the actions that it should be shipped to Kansas City, in order to obtain the highest market price. Konrath loaded the grain into cars of the Chicago, Rock Island & Pacific Railway Company, and consigned it to the order of himself at Kansas City, and took a bill of lading for each car (four in number). On the following day he drew a sight-draft on Hall & Robinson, grain-dealers, in Kansas City, as follows:

"FIRST NATIONAL BANK OF MARION,
MARION, KAN., August 28, 1890.
"At sight, pay to the order of Keller & Dean $716 and no-100 dollars, value received, and charge to the account of                    JACOB KONRATH."
"To Hall & Robinson, Kansas City, Mo."

This draft was indorsed thus: "Pay to First National Bank of Marion, or order. KELLER & DEAN."

The amount of the draft ($716) was credited to Keller & Dean, on the books of the bank. The draft, with bills of lading attached, was then forwarded by the First National Bank of Marion to the American National Bank at Kansas City, indorsed by the former for collection. Upon its arrival there, Hall & Robin-

son accepted it for the sum of $666 only, notifying the drawer (Konrath). This change of amount was not objected to by the drawer or indorsers, and, for the purposes of this case, the draft may be treated as having been drawn for $666 in the first instance. The above amount was collected by the American National Bank from Hall & Robinson and remitted to the First National Bank of Marion.

On the day that the corn was shipped, Konrath wrote a letter to plaintiffs in error, as follows :

"LEHIGH, KAN., August 28, 1890.
"*Hall & Robinson, Kansas City, Mo.:*

" GENTLEMEN—I have shipped you to-day four cars corn, containing 2108 bus. of corn ; have drawn on you $716, which you will please honor when presented. Sell it for the best you can and make return to me at Lehigh, Kan. Yours truly,
JACOB KONRATH."

"Corn is billed to my name. I indorse bill of lading."

The corn covered by bills of lading never reached Kansas City. It was replevied and taken from the possession of the carrier by another bank, under a paramount lien. It appears that the bills of lading were indorsed in blank by Jacob Konrath, the shipper. There was a judgment entered against the plaintiffs below for costs and they have prosecuted error here.

The determining question in the case is whether Keller & Dean and the First National Bank of Marion, under the facts stated, became liable to the plaintiffs in error for a failure of title in the property shipped. There are two decisions called to our attention which hold that a bank, by its act of cashing a draft payable to its order, with bills of lading attached, becomes the owner of the property and undertakes to carry out the

contract made by the drawer (the shipper) with the drawee (the consignee). (*Landa v. Lattin Bros.*, 19 Tex. Civ. App. 246, 46 S. W. 48; *Finch et al. v. Gregg*, 126 N. C. 176, 35 S. E. 251, 49 L. R. A. 679.) In both of these cases the grain, covered by the bills of lading attached to the drafts which the banks cashed was of inferior quality, and the banks were held liable to the consignees and acceptors of the drafts, after the same had been paid, for the difference in value between the good quality of grain which the consignor agreed to ship and the bad quality actually received. We are not favorably impressed with the logic of the opinions in these cases. We think their weakness lies in the fact that the banks are treated as purchasers of the grain. This could not be true, for the property shipped had already been sold to the consignees, the acceptors of the drafts, and the legal effect of the acceptance of such negotiable paper in the hands of an indorsee for value at the time seems to have been overlooked. The right to the price only was, in our judgment, transferred to the bank in the present case, and it held possession of the corn as security for the money it had advanced. (*Tolerton v. Anglo-Cal. Bank*, 112 Iowa, 706, 84 N. W. 930, 50 L. R. A. 777. See, also, *Halsey v. Warden*, 25 Kan. 128.)

The doctrine of the Texas and North Carolina cases is shown in the Iowa case cited to be unsound in principle. The court said:

"The two cases cited [referring to those above mentioned] stand alone in holding the purchaser of a draft with the bill of lading attached liable on a warranty made by the assignor, and the line of reasoning pursued to reach this conclusion is so at variance with well-established elementary principles of law that we decline to accept the rule they announce."

In the case from which we have quoted, the rule of the law of commercial paper is applied, to the effect that after the holder of a negotiable draft, with bill of lading attached, has secured an acceptance of such draft by the drawee and consignee, he cannot be affected by any equities existing between such consignee and the seller of the goods. (*Arpin v. Owens*, 140 Mass. 144, 3 N. E. 25.)

In an exhaustive note to the case of *Finch v. Gregg*, supra, found in 49 L. R. A., at pages 679–683, the annotator cites and comments on a large number of well-considered cases which uphold the doctrine of the Iowa decision above referred to, and, in conclusion, says :

"From these cases, all of which hold that after a draft attached to a bill of lading is accepted the consignee becomes absolutely liable on the acceptance, and that after payment thereon is made he cannot recover it back, notwithstanding any failure of consideration between him and the drawer, it would seem that the decisions in the main case, and in *Landa v. Lattin Bros.*, 19 Tex. Civ. App. 246, 46 S. W. 48, *supra*, were based on a wrong principle, and that if the right principle had been considered the decisions must have been different."

To fix a liability upon the bank, or upon Keller & Dean, under the circumstances of the present case, would not only violate well-settled rules of the law governing commercial paper, but would also tend to decrease the immense volume of business which is carried on by shippers of stock, grain and other commodities by restricting that freedom with which banks advance money to the drawers of such drafts with bills of lading attached. If banks in whose favor such bills are drawn are made liable for damage on account of the defective quality of the property shipped,

and covered by the bill of lading, or for failure of title in the drawer of the draft, a serious impediment would be placed in the way of shippers who need a part or all of the price of the commodity sold before its arrival in the market to which it is consigned. To hold with the plaintiff in error would, to use the language of the author of the note in *Finch v. Gregg*, supra, "undoubtedly cause a revolution in commercial circles."

The judgment of the court below will be affirmed.

All the Justices concurring.