GERMAN-AMERICAN BANK OF ST. LOUIS, MISSOURI, V.
EDWARD G. CRAIG ET AL.

FILED OCTOBER 7, 1903.   No. 13,135.

Sale: WARRANTY.  C. S. & Co., in pursuance of a contract of sale with
   C. & A., consigned certain goods to the latter, drew a draft for
   the amount due, and negotiated it, with the bill of lading attached,
   to a bank, which delivered the goods and bill of lading, and col-
   lected the draft from C. & A.  *Held,* The transaction did not, of it-
   self, operate to substitute the bank for C. S. & Co., as a party to
   the contract of sale, in such a way as to render it liable for
   breach of warranty as to the quality of the goods.

ERROR to the district court for Phelps county:   ED L.
ADAMS, JUDGE.   *Reversed.*

*James I. Rhea,* for plaintiff in error.

*S. A. Dravo, John M. Stewart* and *Thomas C. Munger,*
contra.

ALBERT, C.

Conrad Shopp & Co., of St. Louis, Missouri, entered into
a contract with Craig & Alder, whom we shall hereafter
call the plaintiffs, for the sale and delivery to the latter at
Holdrege, in this state, of certain produce warranted to be
fresh and merchantable.   The goods were consigned to the
plaintiffs, the vendors retaining the bill of lading, which
they attached to a draft drawn on the plaintiffs for the
agreed price of the goods, payable to the order of the
German-American Bank of St. Louis, which discounted
the draft, taking the bill of lading as security for its pay-
ment.   The draft with the bill of lading attached was for-
warded to a bank at Holdrege, where it was presented to
the plaintiffs and by them paid; the bill of lading and the
goods were delivered to the plaintiffs.   The goods did not
conform to the warranty and were practically worthless,
and the plaintiffs brought this action against the St. Louis
bank and the vendors for breach of warranty.   The suit

was aided by attachment, and a certain creditor of the bank garnished. No property of the other defendant was attached and, as it made no appearance in the case, the court acquired no jurisdiction either over its person or property, and the case therefore proceeded against the bank alone; and we shall hereafter refer to it as the defendant. Judgment was given for the plaintiffs, and the defendant brings error.

The decisive question in this case is: Whether by the transfer of the bill of lading the defendant succeeded to the liability of the vendors for a breach of warranty as to the quality of the goods. The plaintiffs' theory is that, by the transfer of the bill of lading, the defendant became the owner of the goods and, from that time, stood in the same relation to the plaintiffs that the vendors themselves would have held, had the bill of lading not been transferred. After considerable research, we have been able to find but two cases involving the same question, namely, *Landa v. Lattin Bros.,* 19 Tex. Civ. App. 246; *Finch v. Gregg,* 126 N. Car. 176. Both of these cases fully sustain the plaintiffs' theory. The first head-note to the Texas case fairly shows the point decided, and is as follows:

"A consignor of wheat delivered to a bank a bill of lading, with draft drawn upon his consignee attached. The bank cashed the draft and paid the consignor. The consignor had contracted to furnish sound wheat, but the wheat furnished was of inferior quality. *Held,* That the bank, purchasing the bill of lading, became the owner of the wheat, and was responsible to the consignee for the failure to furnish sound wheat."

The foregoing language amounts to this: That, by the transfer of a bill of lading and the subsequent delivery of the goods by the transferee to the vendee, the former becomes substituted for the vendor as a party to the contract of sale. We are unable to assent to that doctrine, because it seems to us to contravene some of the elementary principles of the law of contracts, to say nothing of the mercantile usages and customs upon which the law touch-

ing bills of lading rests. It is self-evident that the substitution of one party to a contract for another involves a new contract, a contract of substitution. That being true, the consent of all the parties to be bound by the contract of substitution is an essential element, for without it there could be no meeting of minds, no agreement and, consequently, there could be no contract. That substitution could only be effected by the consent of all parties is especially true where, as in the present instance, the parties to the original contract have a right to rely on the personal responsibility of each other for its performance. Were it otherwise, a responsible vendor might escape liability for a breach of warranty by the substitution of an irresponsible party in his stead. Hence, if the defendant were substituted for the vendors, in this instance, in such a way as to succeed to the rights and liabilities of the latter, it must have been with the consent, express or implied, of the plaintiffs. There is no hint that the plaintiffs expressly consented to the substitution, neither is such consent to be implied from the mere transfer of the bill of lading. It may be claimed, however, that the consent of the plaintiffs to the substitution is to be implied from the acceptance by them of the goods and bill of lading from the defendant, and the payment of the draft. We do not think their consent is to be implied from any or all of those circumstances. Such implication might arise, had the plaintiffs had the right to reject the goods on the ground that they were not tendered by the vendors, but they had no such right. It is a common practice for a vendor of goods to attach the bill of lading to a draft and transfer it to a third party who constructively, at least, delivers the goods. There can be no question that, under such circumstances, a tender of the goods by the transferee of the bill of lading is a sufficient tender by the vendor, and that the vendee would be liable for a breach of contract, should he refuse them on the sole ground that they were not tendered by the vendor himself. Such a tender would be held to be, in effect, a tender by the vendor and a sufficient compliance with the

contract. As the plaintiffs could not have rightfully refused to accept the goods because they were tendered by the defendant instead of by the vendors themselves, it is not to be implied from their acceptance of the goods and the payment of the price that they consented to the substitution of the defendant as a party to the contract, because consent involves the element of choice, and where there is no choice, there can be no consent.

Moreover, bills of lading have been in common use from time immemorial. They have their origin in mercantile usages and customs. The law in respect to them should be interpreted in the light of those usages and customs, as commonly understood by those conducting business in accordance with them, and in such a way as not to hamper trade and commerce unnecessarily. The transfer of bills of lading with drafts attached is a common and convenient commercial device. Its benefits do not extend to one party to the transaction, exclusively, but to all parties. Such transactions would be seriously embarrassed and the usefulness of such device seriously impaired, were it to become the rule that a party, by discounting a draft with a bill of lading attached, becomes substituted as the vendor of the property covered by the bill of lading, and is required to see, at his peril, that the goods fulfill the requirements of the contract of sale. Such rule is not generally recognized in the commercial world, and it appears to us to be not only unsound as a rule of law, but an unnecessary and vexatious restraint on trade. Bills of lading, when properly transferred, operate as a delivery of the property itself, investing the transferee with the constructive custody of the property, which serves all the purposes of an actual possession. *Union P. R. Co. v. Johnson*, 45 Neb. 57. We think the transaction shown in this case is the same, in effect, as though the bank had discounted the draft and, to secure its payment, had taken the goods for delivery to the plaintiffs. The property in the goods did not pass to the defendant, absolutely, but the goods were delivered to it, constructively, for a specific purpose, namely, to be

delivered to the plaintiffs. That being true, so far as the plaintiffs are concerned, the defendant was no more than a mere agency or means employed for the delivery of the goods, assuming no liability under the contract beyond such delivery; it was not substituted for the vendors as a party to the contract of sale, and is not, therefore, liable for the breach of warranty under such contract.

In our opinion, the judgment of the district court is erroneous, and we recommend that it be reversed and the cause remanded for further proceedings according to law.

GLANVILLE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings according to law.

REVERSED.