# Haas & Co. *v.* Citizens Bank of Dyersburg.

*Action by Consignee against Transferee of Bill of Lading for Breach of Original Contract of Shipment.*

[DECIDED JUNE 30, 1905.]

1. *Bills of Lading; Assignments of; Not Governed by Commercial Law.*—Assignments of bills of lading are not governed by the commercial law, and the transferee simply acquires the title to the goods described therein.

2. *Same; Liability of Transferee.*—The transferee of a bill of lading of goods in transit, becomes the owner of the goods and assumes necessarily the responsibility and burden of delivering them in accordance with the terms of the original contract, as though such transferee were the actual seller.

3. *Same; Same.*—A transferee of a bill of lading of goods in transit, who is also the assignee of the draft for the purchase price, cannot avoid liability under the original contract of shipment, as a *bona fide* purchaser for value of the goods, because of his ownership of the draft for the purchase price.

4. *Same; Unqualified Assignment, Effect of.*—The unqualified assignment to a bank of a bill of lading of goods in transit, and of the draft for the purchase price, constitutes such bank the absolute owner of the goods, and the bill of lading cannot in any sense be held as collateral security for the draft.

[Haas & Co. v. Citizens Bank of Dyersburg.]

APPEAL from Montgomery Circuit Court.

Heard before the Hon. J. C. RICHARDSON.

This was a suit by J. C. Haas & Company against the Citizens Bank of Dyersburg, a Tennessee corporation, instituted by an attachment issued by and returnable to W. C. Fuller, a justice of the peace for Montgomery county. A judgment was rendered by the justice in favor of plaintiff, whereupon the defendant appealed to the circuit court of Montgomery. In the circuit court the demurrers interposed by defendant to plaintiff's complaint were sustained, and, plaintiff refusing to plead over, judgment was rendered for defendant, and plaintiff appealed. The complainant filed in the circuit court as finally amended, and the demurrers thereto are fully set out, and are as follows:

"Now come the plaintiffs, and by leave of the court first had and obtained, file as an amendment to, and in lieu of, the complaint heretofore filed in said cause, counts 1, 2 and 3, as follows, to-wit:"

1. "The plaintiffs claim of the defendant the sum of fifty dollars damages for this: the plaintiffs, who were merchants then engaged in business at Montgomery, Alabama, ordered on, to-wit, May 17th, 1901, from one Henry A. Klyce, then residing and doing business at Dyersburg, Tennessee, two carloads of sacked meal, each car to contain, to-wit, three hundred sacks, to weigh, to-wit, ninety-two pounds each, and at and for the price of, to-wit, one and 7-100 dollars per sack; and, to-wit, three hundred sacks to weigh, to-wit, forty-four pounds each, at and for the price of, to-wit, fifty-three cents per sack, all to be by him immediately shipped to the plaintiffs at Montgomery, Alabama. That the said Klyce did, on, to-wit, the 18th day of May, 1901, deliver to a railroad company, for transportation to Montgomery, Alabama, for the plaintiffs, to be delivered upon the order of the said Klyce, a car containing meal, and then and there received from the said railroad company a bill of lading therefor to himself, and purporting to show that said car contained 500 sacks of meal; that the said Klyce then and there made out an account in favor of himself against the plaintiffs for, to-wit, three hundred sacks of meal, containing forty-four pounds each at fifty-three cents per sack, and two hundred sacks each

containing ninety-two pounds of meal, at one and 7-100 dollars per sack, and aggregating, to-wit, three hundred and seventy-three dollars, and attached the said account and bill of lading to a draft for the sum of, to-wit, $373.00, drawn by said Klyce on the plaintiffs, payable to the defendant, the Citizens Bank, and then and there sold and delivered said draft, bill of lading and account to the defendant."

"That the said Klyce did, on, to-wit, the 21st day of May, 1901, deliver to the said railroad company for transportation to Montgomery, Alabama, for the plaintiffs, to be delivered upon the order of the said Klyce, a car containing meal, and then and there received from the said company a bill of lading therefor to himself, and purporting to show that said car contained, to-wit, 600 sacks of meal, and then and there made out an account in his favor against the plaintiffs for, to-wit, three hundred sacks of meal, weighing ninety-two pounds each, for the price of one and 7-100 dollars per sack, and three hundred sacks weighing forty-four pounds each, at fifty-three cents per sack, and aggregating to-wit, four hundred and eighty dollars, and attached the said account and the said bill of lading to a draft drawn by the said Klyce on the plaintiffs, in favor of the said Citizens Bank for, to-wit, four hundred and eighty dollars, and sold and delivered said draft, bill of lading and account to the defendant."

"That the said drafts and accounts and bills of lading were by the defendant, forwarded to a bank at Montgomery, Alabama, for collection from plaintiffs, and the plaintiffs were compelled to pay, and did pay the amount of said respective drafts, and accounts to the said bank at Montgomery, Alabama, before the plaintiffs could and did obtain possession of the said meal, and before they had an opportunity of inspecting and examining the said meal."

"That upon the payment of the said drafts and accounts, plaintiffs received the same together with the said bills of lading from the said bank, and immediately thereafter obtained possession of the meal in said cars, whereupon, the plaintiffs then, for the first time, learned that in one of the cars, the second one shipped as aforesaid, there were seven of said forty-four pound sacks

less than sold and billed as aforesaid, and in the other of said cars, there were eleven of said ninety-two pound sacks less than sold and billed as aforesaid, and that to-wit, seven other of the forty-four pound sacks therein were torn, and the meal therefrom spilled upon the floor of said car, and thereby damaged and rendered valueless to the plaintiffs, and that, to-wit, twenty-nine sacks of said meal were torn so that plaintiffs were obliged, at their own expense, to resack the same before removing it from the car, at great cost and expense, to· wit, twenty-five dollars. All to the damage of the plaintiffs in the sum aforesaid; wherefore they sue."

2. "The plaintiffs claim of the defendant the sum of twenty-five dollars damages for this: that Henry A. Klyce, who was then engaged in business at Dyersburg, Tennessee, did on, to-wit, the 18th day of June, 1901, notify the plaintiffs by letter that he, the said Klyce, had consigned to himself at Montgomery, Alabama, a car of sacked bran, containing three hundred sacks, each sack weighing one hundred pounds, and that he had drawn a draft on plaintiffs with the bill of lading attached for said bran, at the price of seventy-five cents per hundred pounds delivered, and requested plaintiffs to sell said bran to the best advantage. That the said Klyce did, on to-wit, said 18th day of June, 1901, deliver to a railroad company for transportation to Montgomery, Alabama, to be delivered on the order of said Klyce, a car containing bran, and then and there received from said railroad company a bill of lading therefor to himself, and purporting to show that said car contained to-wit, three hundred sacks of bran; that the said Klyce then and there made out an account in his favor against the plaintiffs for, to-wit, three hundred sacks of bran containing one hundred pounds each, at seventy-five cents per hundred pounds, and aggregating to-wit, two hundred and twenty-five dollars, and sent the same to the plaintiffs. That he then and there attached the said bill of lading to a draft drawn by him, the said Klyce on the plaintiffs, payable to the Citizens Bank, the defendant, and then and there sold and delivered said draft and bill of lading to the defendant; that the said draft and bill of lading were by said defendant forward-

ed to a bank at Montgomery, Alabama, for collection from plaintiffs, and the plaintiffs were compelled to pay, and did pay, the amount of such draft to the said bank at Montgomery, Alabama, before the plaintiffs could obtain possession of the said bran, and before they had an opportunity of inspecting and examining the same."

"That upon the payment of said draft, the plaintiffs received the same, together with said bill of lading, from the said bank, and immediately thereafter obtained possession of said bran in said car, whereupon the plaintiffs, then for the first time learned that the said bran weighed one thousand pounds less than the amount billed by the said Klyce, and paid for by plaintiffs as aforesaid; that the plaintiffs sold the bran to the best advantage, and realized therefrom the sum of to-wit, two hundred and seventeen and 50-100 dollars; that the plaintiffs' commission for selling said bran, amounted to the sum of three dollars; all to the damage of the plaintiffs, in the sum aforesaid, whereform they sue."

3. "The plaintiffs claim of the defendant the further sum of one hundred dollars for money had and received by the defendant to the use of the plaintiffs, during, to-wit, the months of May and June, 1901."

The demurrers to the last amended complaint, as above set out are as follows:

"Comes the defendant and says the first count of the amended complaint is insufficient in law, and it demurs thereto as follows: 1. It is not alleged that Klyce delivered to said railroad company the quantity of meal which plaintiffs bought of said Klyce. 2. It is not alleged that the said bill of lading was for the shipment of the quantity of meal alleged to have been bought by plaintiffs from said Klyce. 3. It is not alleged in said count that the said Klyce delivered to a railroad, or shipped to plaintiffs, the meal bought by the plaintiffs of said Klyce. 4. It is not alleged that the bill of lading mentioned was for the shipment of the meal purchased by plaintiffs from said Klyce. 5. It does not appear what it was which the said Klyce sold to the defendant, whether the meal, bill of lading, the account, or the draft to which the said bill of lading and draft were attached.

6. It does not appear that the said draft was in the sum of the account or for the payment of the meal purchased by the plaintiffs of the said Klyce. 7. It is not alleged that the defendants had any notice of any defense to said draft by the plaintiffs at the time defendant purchased the said draft. 8. It is shown that the defendant purchased the said draft of the said Klyce without notice of any fraud practiced by the said Klyce upon the plaintiffs. 9. It does not appear from the said count that the defendant ever sold to the plaintiffs any meal. 10. It does not appear that the defendant ever represented to plaintiffs that the said cars contained the amount of meal purchased of the said Klyce or stated in said accounts, and it does not appear that the defendants ever warranted to plaintiffs that the said cars contained the amount of meal sold by said Klyce to plaintiffs, or mentioned in said counts. 11. It appears that the defendants purchased the said draft for value before maturity, and without notice of any rights of plaintiffs, and it also appears that the said draft was commercial paper. 12. It does not appear that the defendant had any knowledge at and before the payment of said draft of any deficiency in, or damage to the meal purchased by plaintiffs from said Klyce. 13. It does not appear that the plaintiffs purchased of the defendant, or contracted to purchase of the defendant, any meal. 14. It is shown that all contracts of the plaintiff in reference to the purchase and shipment of said meal were with one Klyce and that the defendant was not a party to either of said contracts. 15. It is not alleged that the said cars did not, when shipped, contain the amount of meal purchased, and it is not alleged that said meal was not in good order when shipped. 16. It is not alleged that when said draft was paid, the said cars did not contain in good order the amount of meal purchased of said Klyce. 17. It does not appear from said count as to which of said two shipments complaint is made, nor as to which shipment there was a shortage, nor as to which shipment there was damaged goods or torn sacks. 18. It is shown there were two shipments, and it is plain that there was a shortage, and that there was some damaged goods as to one of said shipments, but it does

[Haas & Co. v. Citizens Bank of Dyersburg.]

not appear as to which of said shipments is referred to. 19. That the said count contains two distinct and separate causes of action for two separate and distinct wrongs or breaches of contract."

"The defendant says that the 2nd count of said complaint is insufficient in law, and it demurs to said count as follows, viz: 1. Each and every ground of demurrer to the first count hereof. 2. It does not appear that the defendant was a party to the contract alleged with Klyce in reference to said bran. 3. It does not appear that the defendant ever represented to plaintiffs that their contract with Klyce had been fully performed or otherwise bought any bran either from the said Klyce or the defendant."

"The defendant demurs to the complaint as a whole as follows, viz: 1. Because said complaint joins two counts in case with one in assumpsit. 2. Because said complaint joints counts in tort with a count in assumpsit."

"Additional demurrers to counts 1 and 2 of complaint as amended November 20, 1902: Comes the defendant and for additional grounds of demurrer to count No. 1 as amended Nov. 20th, 1902, as follows, viz: 1. It appears from the said count that the amount of meal purchased May 17, 1901, was 600 sacks, and that the amount mentioned in the bill of lading was 500 sacks, and it does not appear whether the shortage complained of was as to the amount of meal shipped, or as to the amount of meal purchased. 2. It appears from the said count that the amount of meal purchased May 17, 1901, was 600 sacks, and that the amount of meal mentioned in the bill of lading was 500 sacks, and it does not appear whether the meal damaged, or of which the sacks were torn, were a part of the 600 purchased or the 500 sacks shipped."

CRUM & WEIL, for appellants.—The proposition presented is, whether appellee in purchasing the respective drafts and accounts, with bills of lading attached, did not thereby become a party to, or assignee of, the contract made between Klyce and the appellants, and was not bound to carry out with appellants the contract

[Haas & Co. v. Citizens Bank of Dyersburg.]

as originally made.—*Landa v. Lotin,* 19 Tex. Civ. App.
246; *Finch v. Gregg,* 126 N. C. 176; *Russell v. Smith
Grain Co.,* 22 So. Rep. 287.

The transfer of a bill of lading operates as a delivery
of the property, and the assignee becomes invested with
all the rights of a purchaser.—*Commercial Bank of
Selma v. Hurt,* 99 Ala. 130; *Ala. State Bank, v. Barnes,*
82 Ala. 607; *Weil Bros. v. Ponder,* 127 Ala. 300; *Am.
Pig Iron Co. v. German, Exr.,* 126 Ala. 242.

The fact that the transferree of a bill of lading is a
bank, does not alter the principles involved.—*Eufaula
Grocery Co. v. Missouri Nat. Bank,* 118 Ala. 401.

THOMAS H. WATTS and ALEX TROY, for appellant.
The drawee of a bill of exchange who accepts it cannot
resist its payment as against the *bona fide* holder, be-
cause the acceptance is without consideration, or the
consideration has failed.—*Young v. Lehman, Durr &
Co.,* 63 Ala. 519; *First Nat. Bank of Detroit v. Burkham,*
32 Mich. 328. In the case last cited the drawee had paid
a bill of exchange with the bill of lading attached. The
bill of lading was fictitious and the drawee sued the
payee. The court denied the right to recover, saying:
"The payee in every case where a bill is discounted re-
lies and is compelled to rely upon such security as he
has from the drawers, until the bill is sent forward and
paid or accepted. When that takes place, he is fur-
nished with what, to him, is conclusive evidence that the
drawer was authorized to draw the bill."—See also
*Kelly v. Lynch,* 22 Cal. 661; *Robinson v. Reynolds,* 2
Adolph & Ellis, U. S. 196; *Hoffman & Co. v. Bank of Mol-
waukee,* 12 Wall. (U. S.) 181; *Goetz v. Bank of Kansas
City,* 119 U. S. 551; *Woods v. Thiedman,* 1 Hutlst. C.,
478; *Lether v. Simpson,* 40 L. J. Ch. N. S. 177; *German
Amr. Sav. Bank v. Craig,* 96 N. W. 1023.

TYSON, J.—The question raised by demurrer to the
complaint as amended because of misjoinder of courts
was eliminated by striking the third count, which was
the common count for money had and received. The
theory of this demurrer was that the two special counts
were in case—for a breach of duty. We do not so con-

strue them. They are each clearly a special declaration in assumpsit, predicated upon a breach of contract and practically seek a recovery for the money paid by plaintiffs for goods which were never delivered to them. They are in substance counts for money had and received, averring specially the facts upon which that claim is predicated.

Doubtless the purpose of the pleader in framing them was to have the liability of defendant *vel non,* for the money paid by plaintiffs to it as the owner of the goods, determined by demurrer instead of by objections to evidence or by charges, which latter method would, necessarily, have been resorted to had the complainant simply contained the common count for money had and received for their use.

On the facts averred, there can be no doubt of Klyce's liability if he had made no assignment of the bill of lading. Did the defendant by becoming the owner of the bill of lading, and the debt to accrue upon the actual or symbolical delivery of the goods to the plaintiffs, take Klyce's place? In other words, did it by becoming the owner of the goods, while in transit, become responsible for the performance of Klyce's contract? Or is it entirely relieved of all its burdens and entitled to have and hold the money paid to it for the goods which it never delivered?

It will scarcely be doubted that defendant by becoming the owner of the bill of lading became the owner of the goods, and the goods continued to be its property until the account assigned by Klyce to it against the plaintiffs and the draft drawn by Klyce on the plaintiffs, which also became its property, were paid and the goods delivered.—*American National Bank v. Hudson,* 123 Ala. 612.

Assignments of bills of lading are not governed by the commercial law. The transferee simply acquires the title of the transferrer to the goods described in them. *Commercial Bank of Selma v. Hart,* 99 Ala. 130; *Jasper Smith Co. v. K. C. M. & B. R. R. Co., Ib.* 416; 4 Am. & Eng. Ency. of Law (2nd ed.), p. 549.

The contract of sale between Klyce and the plaintiffs was merely an executory one. Klyce had agreed to sell

and the plaintiffs to pay for the goods upon their delivery. Before this contract was executed between these parties, the defendant became the owner of the goods and of the right to receive pay for them. It undertook the performance of the executory contract by a delivery of the goods to plaintiffs and received the money to be paid by plaintiffs upon the execution of that contract; and notwithstanding it was paid for goods, which it never delivered, and which it assumed to deliver, it undertakes to avoid its liability by saying that because it became the owner of the draft which was paid by plaintiffs it is a *bona fide* purchaser for value of the goods from Klyce, and therefore, not responsible for their delivery. To so hold would be to give effect to only a part of the transaction—to ignore its ownership of the goods and the account transferred to it by Klyce.

By no rule of construction can the averments of the complaint justify the conclusion that the bill of lading was held by defendant as collateral security to the draft, or that defendant was merely Klyce's agent for its collection. The cases relied upon by appellee (reported in 75 S. W. Rep.; 84 N. W. Rep. and 96 N. W. Rep.) proceed upon the theory that the bill of lading was held by the bank as a security for the payment of the draft. The writers of those opinions were influenced to reach that conclusion partly upon the idea that to hold otherwise would impose a hardship upon the bank. The complaint in neither of the cases justified such a construction. And in order to sustain that conclusion the court resorted to its common knowledge of usages among banks to discount drafts and to accept a transfer of bills of lading as collateral security instead of dealing with the transaction as laid in the complaint. In each of the cases it was necessary to sustain the conclusion reached that the unqualified ownership by the bank of the bill of lading be gotten rid of; otherwise, there was no escaping the conclusion that it was liable. To do this, notwithstanding the complaint alleged a purchase of the draft and the bill of lading by the bank, it became necessary to hold that the transaction in legal effect was a loan of money by the bank and the transfer of the debt and bill of lading was intended as a security therefor. There is

no rule of law or of public policy against a bank becoming the absolute owner of the debt and the bill of lading for the goods, or its undertaking to perform an executory contract for the sale of the goods. And no sound reason exists why it should not be required to perform its contracts as individuals are required to do.

Would any court hold that if A contracted to sell B a horse, warranting its soundness, for $100.00 to be paid upon its delivery, and A should assign the contract to C, and C should deliver an unsound horse to B and receive the $100.00, that C would not be liable for a breach of the warranty? We think not.

The case in hand is not different in principle, unless the fact that plaintiffs paid the draft, which was the property of defendant, for the purchase price of the goods, differentiates it. The draft was drawn to the defendant's order accompanied by the bill of lading and the account, each of which was sold to it. The draft had not been accepted by the plaintiffs before its negotiation to defendant, and until accepted, in the absence of some fact tending to show that defendant was induced by the conduct of the plaintiffs to purchase it, they were not bound by it.

When it was paid, the purchase price to be paid for the goods as well as the goods themselves belonged to the defendant. The plaintiffs were not parties to the transaction by which it acquired the ownership of the goods and the right to receive payment for them. And when, as here, the defendant becomes the owner of the debt and the goods, and assumed necessarily the responsibility and burden of delivering them to the plaintiffs, it became the seller in fact and must bear the burden of the transaction. In short, the defendant took the contract of Klyce, the shipper, and stood in his shoes, with the same rights, no greater, no less. And the payment of the draft by plaintiff, which merely evidenced the price to be paid for the goods, can no more shield or protect the defendant from liability than its payment would have protected Klyce had he undertaken a delivery of the goods and received the purchase price for them.

It would be an anomaly to hold that the defendant is protected as *purchaser* of the account and bill of lading,

[Haas & Co. v. Citizens Bank of Dyersburg.]

because the plaintiffs paid the draft, which also belonged to it in right of its ownership of the goods; or that it held the bill of lading as security for a debt which belonged to it. Just how it could be the unqualified owner of the debt and only a qualified owner of the goods, when it purchased both, we confess our inability to see. When it purchased these papers it was bound to know the nature of the transaction between Klyce and plaintiffs. The bill of lading and the account attached to the draft carried notice on their face that Klyce had contracted to sell the goods represented by the account and bill of lading and to deliver them at the point of their destination.

To repeat in a measure, the essence of the agreement between Klyce and plaintiffs was that of a cash transaction to be consummated in the future; that is, the goods were to remain the property of Klyce until there was an actual or symbolical delivery of them and contemporaneous payment of the price.

The distance of the parties from each other necessitated a resort to the usages of trade, whereby the price is paid on a symbolical delivery of the goods by a transfer of the bill of lading.

By shipping the goods to his own order Klyce retained the absolute title, and he would have had the title until the goods were at the place of delivery, so that an actual delivery could have been made on and for the payment of the price. But he chose not to do so. He said in effect, to defendant: "I have agreed to sell and deliver to the plaintiffs at a certain place, certain goods at a certain price. Here is a bill of lading for these goods to my order, here is a draft for the price to be paid on delivery of the goods and here is an account showing the items. I desire the money for these goods now. I propose to sell the contract to you. If you choose to deliver the goods, which you may do actually or symbolically by assignment of bill of lading to plaintiffs, you will have the money to be paid for them at the place of delivery, otherwise, you will have your goods and an obligation of plaintiffs' to take them at the price." Thus far the defendant has dealt only with Klyce. After defendant purchased the contract, it went to plaintiffs and said: "Here is the

[Marengo County, *et al.* v. Matkin, *et al.*]

bill of lading for the goods Klyce was to deliver to you, but which belongs to me—pay me the price and you can have the goods." The plaintiffs pay the price and take an assignment of the bill of lading. It is, therefore, plain that the symbolical delivery was the defendant's act, and as it took the place of an actual delivery, it must be as perfect as an actual delivery. If it is false in any respect, there is a liability upon defendant, who made itself a party to the transaction. The plaintiffs, having paid the purchase price to defendant *for its goods,* it will not be allowed to say to plaintiffs, "You did not deal with me." This conclusion is fully sustained by our own case of *Eufaula Grocery Co. v. Missouri National Bank,* 118 Ala. 408, and the following cases in other jurisdictions.—*Finch v. Gregg,* 126 N. C. 176; *Searles Bros. v. Smith Grain Co.,* 80 Miss. 688.

On the facts averred, if proven, we entertain no doubt of the plaintiffs' right to recovery.

Reversed and remanded.