[Citizens Bank of Dyersburg v. J. C. Haas & Co.]

# Citizens Bank of Dyersburg *v.* J. C. Hass & Co.

## *Assumpsit.*

(Decided June 29th 1907.   46 South. 1036.)

APPEAL from Montgomery Circuit Court.
Heard before Hon. J. C. RICHARDSON.

E. K. CAMPBELL and ALEX TROY, for appellants.

STEINER, CRUM & WEIL, for appellees.

Per Curiam.   Affirmed on authority of *J. C. Haas & Co. v. Citizens Bank of Dyersburg,* 144 Ala. 562, 39 South. 129, 1 L. R. A. (N. S.) 242, 113 Amer. St. Rep. 61.

DOWDELL, J.—(dissenting).   In the present appeal the judgment appealed from is affirmed, on the opinion in this case on former appeal.—*Haas & Co. v. Citizens' Bank of Dyersbury,* 144 Ala. 562, 39 South. 129, 1 L. R. A. (N. S.) 242, 113 Am. St. Rep. 61.   I am constrained to dissent from this conclusion, as I did on the former appeal, and will undertake now to express my reasons for such dissent.   The same question that was presented before on the pleadings is now presented by bill of exceptions reserved on the trial.   The only plea was that of the general issue, and the case as last tried was on an agreed statement of facts.   The agreed statement of facts, when analyzed, is in substance as follows:   The plaintiffs, Haas & Co., who were merchants, had contracted with one Klyce for the purchase of meal, and Klyce, who was the drawer of the draft, had agreed to sell and ship the meal.   He did not ship all of it; for under the facts it

appears that on arrival of the meal there was a shortage in the number of sacks. The bill of lading called for the correct number of sacks, and was therefore false so far as the shortage was concerned. This bill of lading was issued to the order of Klyce, and showed a consignment to his order at Montgomery, Ala. Klyce made out a statement in the form of an account against Haas & Co., showing the latter to be a debtor of Klyce for so many sacks of meal at so much per sack, amounting to so many dollars. This account and the bill of lading were attached to a draft, drawn by Klyce on Haas & Co., and, having indorsed the bill of lading, he carried the papers to the bank, which purchased or discounted the draft with the other papers attached, forwarded them to its correspondent in Montgomery who in turn presented them to Haas & Co., who paid the amount of the draft, receiving it and the papers attached to it. When the shipment arrived, the shortage was discovered, and it was also found that some of the goods were damaged, and the appellees brought suit to recover from the bank damages on account of the shortage and the condition of the goods.

In applying the law to the facts contained in the agreed statement, it may be well to note certain principles, applicable to bills of exchange, which should be kept in mind. The acceptor of a bill of exchange becomes the primary principal debtor, and his obligation is similar to that of a maker of a promissory note. Upon a failure to pay at maturity, there is no legal impediment to an action at law by the payee against the acceptor. The acceptance is of itself an admission by the acceptor of everything essential to the existence of his liability as primary principal debtor, of the right of the drawer to draw, and of the capacity of the payee to take and hold, or to indorse, the bill.—*Capital City In-*

*surance Co. v. Quinn,* 73 Ala. 558. The presumption is that he has funds of the drawer in hand to meet the draft (*Rudulph v. Brewer,* 96 Ala. 192, 11 South. 314), or, as has been correctly stated: "The drawer of a bill of exchange, who accepts it, cannot resist its payment as against a bona fide holder because the acceptance is without consideration or the consideration has failed; nor, having paid it, though in ignorance of the want or failure of consideration, can he reclaim the money."— *Young v. Lehman & Co.,* 63 Ala. 519. The rights and liabilities of the several parties to a bill of exchange are so well and have so long been fixed by the principles of the commercial law that it is needless to discuss them; but it is contended that the facts here take the case out of the general rule above expressed, and place a liability on the defendant bank, from which it would be exempt if it had simply purchased or discounted the draft with no invoice or bill of lading attached. Klyce's contract was executory. The "account," which, in the agreed statement of facts, is called in the alternative an "invoice," was not an obligation of any kind. Haas & Co., did not owe Klyce for the meal, and would not owe him, until it was delivered. The account certainly had no actual existence, nor could it have a potential one, in the absence of some engagement out of which it was to arise.—*Shackleford v. Kiser Co.,* 131 Ala. 227, 31 South. 77. The only effect to be given the account is that it was an invoice purporting to show certain items. If it was untrue, it was as misleading to the bank as to the merchants. If, however, the account or invoice be treated otherwise, and it were held that it was assigned to the bank, the effect of the assignment would not be as plaintiffs contend in this case.—*Tolerton & Stetson Co. v. Bank,* 112 Iowa, 709, 84 N. W. 930, 50 L. R. A. 777. The assignee of a chose in action acquires no

greater rights than the assignor had.—*Harrison v. Marshall,* 6 Port. 65; *Gayle v. Benson,* 3 Ala. 234. Our statute (Civ. Code 1896, § 879) recognizes the principle when it provides that all contracts and writings, except such as are governed by the commercial law, are subject to certain defenses previous to notice of their assignment or transfer. "An assignee of a chose in action takes it subject to all existing equities between the original parties."—*Stewart v. Kirkland,* 19 Ala. 162. This same proposition is, however, sometimes stated with some inaccuracy as follows: "The assignee stands in the shoes of the assignor, with the same rights, no greater, no less." The inaccuracy consists in the implication that the assignee assumes the liabilities of the assignor, and a statement of a principle applicable where the assignee is suing upon a chose in action is thus erroneously made to apply to a case where the assignee occupies the position of a defendant. It will, therefore, be seen that the assignment of the account, even if it be treated as such, did not operate to create a liability on the bank.

As to the bill of lading, it evidenced a contract between the shipper and the railroad company, and was drawn to the order of the shipper, who indorsed it. The bill of lading was not the contract made by Klyce with Haas & Co., and the transfer of it by him did not operate to relieve him from his executory contract with Haas & Co., nor to impose a liability on the bank to carry out that executory contract, in the absence of an express agreement to do so. The indorsement and delivery to the bank of the bill of lading, upon its purchase or discount of the draft, to which it was attached, was a transfer to it of the title to the goods in transitu.— *American National Bank v. Henderson,* 123 Ala. 613, 26 South. 498, 82 Am. St. Rep. 147. But it does not fol-

low that the bank thus became liable to deliver goods, which were agreed to be sold and delivered by Klyce to the plaintiffs. There was no express agreement by the bank that it would do so, and the acquisition of the bill of lading, under the facts shown in this record, does not make an implied contract that it would assume Klyce's contract, or make it (the bank) the vendor of the goods. The bill of lading is said to represent the goods—that is, that it is symbolic; but it cannot, from this, be cor- rectly said that the bill of lading is the goods. The bill of lading in this case did not represent all the goods which Klyce had agreed to sell, for the reason that there were actually less goods delivered to the carrier, and consequently to the plaintiffs, than the contract between the original parties contemplated. In other words, if the bill of lading had been the goods which Klyce agreed to ship, or represented the goods in that sense, the plain- tiffs, upon its delivery to them, would have received what they contracted to buy; but they complained that whilst the bill of lading represents the goods, and the bank acquired it under the facts stated, its delivery to them was not a delivery of the goods. There is a mani- fest inconsistency in the position that, when the bank acquired the bill of lading, it thereby became the pur- chaser of the goods, which Klyce had agreed to sell and ship to the plaintiffs, but that when it delivered to plain- tiffs the identical papers it received from Klyce it did not discharge its liability. This court, in *American National Bank v. Henderson*, 123 Ala. 612, 26 South. 498, 82 Am. St. Rep. 147, adopts the following state- ment of the law: "When the consignor draws upon the consignee for the purchase money, and the draft, the bill of lading attached, is indorsed or transferred to some one who discounts the bill of exchange, a special property in the goods thereby passes to the transferee, subject to

be divested by the acceptance and payment of the draft; and if the consignee refuses to accept the draft the title of such transferee becomes absolute. But the acceptance and payment by the consignee of the draft, accompanied with the bill of lading or shipment receipt, vests the title to the goods in him. A bill of lading stands for and represents the goods therein receipted for, during their transit and until they are completely delivered to the person entitled to them, but no longer." If a bill of lading, drawn to the order of a consignor and indorsed by him, is transferred to another, who in turn disposes of it to a third person for value, it would hardly be contended that such third person can maintain an action against his transferror for a failure of consideration growing out of a contract which such third person may have had with the original consignor to ship goods, which were in fact not shipped, and, therefore, not represented by the bill of lading. The parties in such case are dealing with a bill of lading, and not with an executory contract, of which they may be entirely ignorant.— *Young v. Lehman & Co., supra.*

It would seem from the foregoing that if the parties had been dealing with the bill of exchange alone, or with the "account" referred to alone, or with the bill of lading alone, the facts of this case, in the absence of an express assumption by the bank of Klyce's executory contract, would not have created any liability on the bank, and there was certainly no express assumption of that contract. It is difficult to see how a different conclusion could be reached because the several items are united in one transaction. The fallacy of the reasoning in the opinion in 144 Ala. 562, 39 South 129, 1 L. R. A. (N. S.) 242, 113 Am. St. Rep. 61, rests in the assumption that by the transaction the bank became the seller of the goods, when the fact is the goods had already been

sold by Klyce to the plaintiffs.   The case of *Eufaula Grocery Co. v. Missouri Bank,* 118 Ala. 408, 24 South. 389, is relied on as an authority in support of the conclusion of the majority.   That action was brought by the purchasers of certain hay, who had rescinded the contract of sale.   A draft payable on arrival of the hay had been accepted and paid, and when the hay arrived it was of a quality inferior to that which the vendor had agreed to sell.   The bank still held the money, and no question arose as to its ownership of the draft or of the bill of lading.   It was merely a collection agent, and it pleaded only the general issue.   So long as the agent held the fund which ex æquo et bono its principal was not entitled to receive, it could be made to respond to the demand of the vendee that the money he had paid be returned to him.   It was not decided in that case that if the bank was a holder for value of the draft with bill of lading attached, which the drawee had accepted and paid, it could be made liable to the acceptor as for a failure of consideration, and if it had been so held the decision would be at variance with the rules of commercial law as laid down by repeated decisions of this court. See 1 Brickell's Dig. 275; *Wilson v. Isbell,* 45 Ala. 142; *Young v. Lehman & Co.,* 63 Ala. 519; *Capital Insurance Co. v. Quinn,* 73 Ala. 558; *Hunt v. Johnson,* 96 Ala. 130, 11 South. 387; *Slaughter's Case,* 109 Ala. 157, 19 South. 430.   The cases cited and relied on by the majority, outside of the Alabama Case of *Eufaula Grocery Co., supra,* are the cases of *Landa v. Lattin,* 19 Tex. Civ. App. 246, 46 S. W. 48, *Finch v. Gregg,* 126 N. C. 176, 35 S. E. 251, 49 L. R. A. 679, and *Searles v. Smith Grain Co.,* 80 Miss. 688, 32 South. 287.   The last two cases cited—that is, the North Carolina and Mississippi cases— were based upon the case of *Landa v. Lattin,* as an authority. This case, however, was subsequently overruled by the

Supreme Court of Texas in *Blaisdell, etc., Co. v. Citizens' National Bank,* 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944. The great weight of authority is opposed to the principle stated in the three cases above cited, as well as the decision in this case on former appeal, and among the cases in other jurisdictions holding the contrary doctrine may be mentioned the cases of *Hall v. Keller,* 64 Kan. 211, 67 Pac. 518, 62 L. R. A. 758, 91 Am. St. Rep. 209, *Tolerton & Stetson Co. v. Bank,* 112 Iowa, 706, 84 N. W. 930, *Blaisdell, Jr., Co. v. Citizens' Nat. Bank,* 96 Tex 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944, and the recent case of *Leonhardt & Co. v. Small,* 117 Tenn. 153, 96 S. W. 1051, 6 L. R. A. (N. S.) 887. In all such transactions the bill of lading is regarded by banks and merchants as a collateral security for the discounted draft, and it is unimportant what form the transaction may take as between the consignor and the discounting bank, in the absence of an agreement on the part of the bank to assume the contract of the seller; and without an express agreement to this effect one will not be implied merely from the transaction as shown by the facts in this case.

For the reasons above stated, I thing the judgment appealed from should be reversed, and the case as reported in 144 Ala. 562, 39 South. 129, 1 L. R. A. (N. S.) 242, 113 Am. St. Rep. 61, overruled.

SIMPSON, J., concurs 'in the dissenting opinion of DOWDELL, J.