Allen, J.
 

 It is the contention of the plaintiff in error that a bank, by undertaking to pay drafts with bills of lading attached pursuant to the terms of a
 
 *465
 
 letter of credit received by it, does not assume the legal liabilities of the shipper or seller with respect to the kind, quality, and condition of the goods actually shipped, but its responsibility is limited to assuring itself that the bills of lading and invoices attached to the drafts comply with the requirements of the letter of credit, and that such bank, by negotiating and transferring drafts with bills of lading attached, pursuant to such letter of credit, does not thereby become subject to and governed by the provisions of Section 8993-34, General Code, as to the implied warranty of the merchantability of goods covered by the bills of lading, nor by the similar provisions of the Uniform Sales Act of Ohio, Section 841£, General Code, and Title 49, Section 114, U. S. Code, Section 8011, Barnes’ Federal Code, U. S. Comp. Stats., Section 8604qq.
 

 ' It is the contention of the defendants in error that the Bank of Italy, by reason of discounting the drafts with bills of lading attached, became the owner of the specific grapes that were to be delivered in Youngstown; that the Bank of Italy had knowledge that the plaintiffs had purchased a food product, and that the money to be paid by the drafts was for such purchase price, and that hence the Bank of Italy, by purchasing the drafts with bills of lading attached, assumed the obligation of making such delivery in Youngstown, and, when it demanded payment, impliedly represented that it was delivering a food product in merchantable condition.
 

 These legal questions are raised by the charge of the court, which included the following statement:
 

 “I say to you that if a person, and that term includes a bank, negotiates or transfers for value a
 
 *466
 
 bill, meaning bill of lading, by indorsement or delivery, unless a contrary intention appears, warrants, among other things which are not important in this case, that the goods represented by the bill of lading are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer, without a bill, the goods represented thereby. I say to you that if the contract of the parties had been to transfer, without a bill of lading, the goods represented thereby there would have been a warranty that the grapes were merchantable, and, applying this statement of the law to this case, I say to you that, if you find that the Bank of Italy did negotiate or transfer for value the bills of lading in question, whether by indorsement or delivery, as a matter of law the Bank of Italy did warrant that the grapes represented by the bills of lading were merchantable, unless you find that the Bank of Italy has shown that a contrary intention appeared with respect to its liability. I say to you as a matter of law in this connection that, if you find that such contrary intention did not appear, and if you further find that the grapes in question were not merchantable at the time the drafts were paid by plaintiffs, then I say to you further, as a matter of law, that the Bank of Italy is liable to the plaintiffs in this action, Colla & De Cola, for the difference between the market value of the grapes at Youngstown of the grapes in merchantable condition, and as they actually were as shown by all of the evidence, if you find that the grapes were not in merchantable condition at such time. ’ ’
 

 The court’s charge above quoted referred to Sec
 
 *467
 
 tion 8993-34, General Code, which is practically identical with Section 8416, General Code, and Title 49, Section 114 U. S. Code; Section 8011, Barnes’ Federal Code; IJ. S. Comp. Stats., Section 8604qq.
 

 Section 8993-34, General Code, reads as follows:
 

 “A
 
 person who negotiates or transfers for value a bill by indorsement or delivery, including one who assigns for value a claim secured by a bill, unless a contrary intention appears, warrants—
 

 “ (a) That the bill is genuine,
 

 “(b) That he has a legal right to transfer it;
 

 “(c) That he has knowledge of no fact which would impair the validity or worth of the bill, and
 

 “(d) That he has a right to transfer the title to the goods, and that the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer without a bill the goods represented thereby.”
 

 The section from the Federal Code is identical with the above, with the exception of the clause as to assignment, which does not appear. The section of the Sales Act, Section 8416, General Code, is identical with the above-quoted section, excepting that it does not contain the last paragraph of Section 8993-34, which is not material to this controversy and is therefore not given here.
 

 The court also refused certain requests to charge made on behalf of the bank, which it is not necessary to quote, as they were based upon the proposition ¡■that the bank, by undertaking to pay the drafts in question, did not assume the liabilities of the seller with respect to the kind, quality, and condition of the goods actually shipped.
 

 
 *468
 
 In other words, the court in his charge and by his refusal to charge held that the California bank, by Íthe negotiation of the bills of lading, had substituted i itself for the seller of the goods so far as the. j liability of the seller for the merchantable condition I of the goods upon arrival was concerned.
 

 I In this the court was in error. Neither the section of'the bills of lading statute above quoted, nor of the' Sales- Act, nor of the Federal Code, applies to the transaction between the Bank of Italy and the plaintiffs. The contract between them was set forth in the letter of credit, and it was not a contract of Isale. The contract between the Bank of Italy and the plaintiffs was not and never would have been “to transfer without a bill the goods represented thereby.” The Bank of Italy was not in the business of selling grapes, or any commodity of that kind. Its contract related only to the manner in • which payment should be made for the grapes which were shipped under an entirely independent contract of sale, and the transfer of the bill of lading by the bank was a mere, incident of the transaction. It is true that the bill of lading attached to the draft was assigned to the Bank of Italy as security, but the 'bank had an interest in the goods only to an extent sufficient to protect its claim. The record is entirely silent as to any knowledge of the bank with regard to the contract between the seller and purchaser excepting that stated in the letter of credit, Íand the bank being holder of the draft in due course, was not liable upon a breach of the warranty of the contract between the original parties.
 

 This decision is supported by the great weight of
 
 *469
 
 authority in the United States. Thus in 32 L. R. A. (N. S.), 1173, in a note commenting upon, this subject, the note writer states that the decision in
 
 Cosmos Cotton Co.
 
 v.
 
 First National Bank of Birmingham,
 
 171 Ala., 392, 54 So., 621, 32 L. R. A. (N. S.), 1173, Ann. Cas., 1913B, 42, which mates the same holding, “removes about the last support of the doctrine * * * that one who purchases and collects draft with a bill of lading attached assumes the (obligation of the seller toward the purchaser, and is /liable to the latter for any deficiency or defects in goods. As shown in the earlier notes this doctrine has now been expressly repudiated by most the courts that previously favored it.”
 

 In 4 Uniform Laws Annotated, 61, Bills of Lading Act, the commissioners’ note characterizes the decision in
 
 Landa
 
 v.
 
 Lattin Bros.,
 
 19 Tex. Civ. App., 246, 46 S. W., 48, by saying, ‘£ The court went to the extreme length of holding that the holder of a bill of lading taken .for security on the discount of a draft succeeded to all the liabilities of his transferor, the seller of the goods, and was to be regarded as warranting the quality of the goods to the same extent as the seller,” and describes this decision as being “opposed to both authority and reason.”
 

 While
 
 Landa
 
 v.
 
 Lattin Bros.
 
 has been overruled in Texas, in the case of
 
 S. Blaisdell, Jr., Co.
 
 v.
 
 Citizens’ Nat. Bank of Tyler, 96
 
 Tex., 626, 75 S. W., 292, 62 L. R. A., 968, 97 Am. St. Rep., 944, the earlier doctrine has been followed in an Alabama decision
 
 (Haas
 
 v.
 
 Citizens’ Bank,
 
 144 Ala., 562, 39 So., 129, 1 L. R. A. [N. S.], 242, 113 Am. St. Rep., 61), and in a Mississippi decision
 
 (Searles Bros.
 
 v.
 
 Smith Grain Co.,
 
 80 Miss., 688, 32 So., 287). In the
 
 Haas case,
 
 how
 
 *470
 
 ever, the decision is expressly grounded upon the fact that the bank purchased the account, a circumstance which completely differentiates that case from the instant record. Contrary decisions, however, have been rendered in
 
 Tolerton & S. Co.
 
 v.
 
 Anglo-California Bank,
 
 112 Iowa, 706, 84 N. W., 930, 50 L. R. A., 777;
 
 Hall
 
 v.
 
 Keller,
 
 64 Kan., 211, 67 P., 518, 62 L. R. A., 758, 91 Am. St. Rep., 209;
 
 German-American Bank
 
 v.
 
 Craig,
 
 70 Neb., 41, 96 N. W., 1023;
 
 Lewis Leonhardt & Co.
 
 v.
 
 W. H. Small & Co.,
 
 117 Tenn., 153, 96 S. W., 1051, 6 L. R. A. (N. S.), 887, 119 Am. St. Rep., 994 — and that this is the federal rule is shown by
 
 Hoffman & Co.
 
 v.
 
 Bank of Milwaukee,
 
 79 U. S., (12 Wall.), 181, 20 L. Ed., 366;
 
 Goetz
 
 v.
 
 Bank of Kansas City,
 
 119 U. S., 551, 7 S. Ct., 318, 30 L. Ed., 515; Daniel on Negotiable Instruments, 174, 175.
 

 The doctrine of these holdings is in brief that the possession of a bill of lading by a bank obtained under these circumstances does not substitute the bank for the seller as a party to the contract of sale; that the purchaser of the draft does not secure such an unqualified title to the goods as to render him responsible upon the contract in accordance with which the property was shipped, and that the transferee of the bill of lading takes a special property only in the goods covered by the bill, defeasible by acceptance and payment of the draft. In other words, the holder in due course has an interest in the goods which are the subject of the bill of lading only to an extent sufficient to protect his claim.
 

 j
 
 A bank is not authorized to deal in merchandise, nor to sell goods, and the mere fact that a bank in purchasing drafts with bills of lading attached does
 
 *471
 
 secure a certain limited property in the goods covered by the bill of lading does not render it responsible as if it were the seller upon the contract.
 

 The court also charged the following:
 

 “Now, I say to you as-a matter of law that the Bank of Italy was not legally entitled.to such money or any part thereof unless and until it performed, or caused to be performed, all of the conditions required and set out in the letter of credit to which I have referred.
 

 “And I further say to you that it is admitted in this case that the conditions of the letter of credit were performed save and except only those with respect to the condition that the grapes were muscota grapes, and upon these two questions there is a dispute between these parties,- the 'plaintiffs claiming that these conditions were not complied with, and the defendant refusing to admit that they were not complied with and affirmatively claiming that it, the Bank of Italy, had complied with all of the terms of the letter of credit except such as it claims were waived. Therefore I say to you that upon this phase of the case it is a question of fact solely for you to determine
 
 as. to whether or not the Bank of Italy did comply with the terms of the letter of credit, as I have indicated.
 
 If you find that the Bank of Italy did comply with all of the terms of the letter of credit, particularly as to the conditions stated, namely,
 
 grapes to he muscota, and shipment to he in ventilator cars,
 
 or that there was a waiver of those not complied with, if any,
 
 then I say to you that upon this phase of the lawsuit there would he no liability as against the Bank of Italy.
 
 On the other hand on this phase of the lawsuit, if
 
 *472
 
 you find that the Bank of Italy did not comply with all of the terms of the letter of credit, which I have indicated, that the grapes were not shipped in ventilator cars, or that the grapes were not muscota grapes, and that there was no waiver of these conditions, then I say to you as a matter of law that the Bank of Italy is liable to the plaintiffs in this case for the damage, if any, which you may find occurred as a direct and proximate result of such failure upon the part of the Bank of Italy, taking into consideration all of the evidence upon that question.” •
 

 This charge was erroneous. The undisputed evidence showed that the Bank of Italy had complied with all of the terms of its contract.. The court apparently proceeds upon the theory that in some way, by accepting the letter of credit from the Youngstown bank, the Bank of Italy became obligated to carry out certain conditions of the sale, namely, the conditions that.the grapes should be muscats, and should be shipped in ventilator cars. It isJ true that the letter of credit recited the • terms as to shipment in ventilator cars and as to the kind of grapes. These terms served to identify the contract for which payment was to be made to the California shippers by the plaintiffs, in which payment the Bank of Italy was to play an essential part. But the bank, by acceptance of the guaranty of payment of the drafts which were to be presented to it did not agree to inspect the shipments to inform itself whether the seller had lived up to its contract. It merely agreed to pay the sight drafts up to an amount not exceeding $6,000.
 

 It would have been simple for the consignee to impose a condition of inspection upon the bank.
 
 *473
 

 Laudisi
 
 v.
 
 American Exch. Nat. Bank,
 
 239 N. Y., 234, 146 N. E., 347. In its telegram of October 9, 1922, it could have stated:
 

 “If you will inspect goods upon shipment and guarantee their merchantability upon arrival, we guarantee payment at sight documentary draft of D. Rubino.’’
 

 In such case the bank would have understood its responsibility for the kind, condition, and quality of the goods upon shipment and upon arrival, and for the method of packing, as well as its obligation in the matter of the payment of the drafts and delivery of the bills of lading to the consignee. No such condition, however, was imposed.
 

 What,- then, was the bank’s liability under the letter of credit?
 

 It is, the general rule that in this situation the bank does not guarantee the genuineness of the bill of lading which it delivers to the consignee.
 
 Goetz
 
 v.
 
 Bank of Kansas City, supra.
 

 Now if the bank does not even guarantee the genuineness of the paper which passes through its hands, how can it be said that it guarantees the shipment which it never sees, which possibly is put into ears some hundreds of miles away? The argument is that, since the bill of lading which came into its hands shows that the shipment was in box cars instead of in ventilator cars, the bank was in some way liable for the nonperformance of the shipper’s contract. We do not agree with this theory of the case, for, as stated above, the Bank of Italy was in no sense a party to the contract of sale. We are inclined rather to agree with the court in the case of
 
 Cosmos Cotton Co.
 
 v.
 
 First Nat. Bank of
 
 
 *474
 

 Birmingham, supra,
 
 which held that the only warranty that can be attributed to the bank is that the bill of lading was in the same condition as when it got it from Smith and Coughlan. But with the contention that the mere mention of the terms of the contract of sale binds the bank which receives the letter of credit to inspect the merchandise shipped we do not agree, even though the bill of lading shows in this instance that the shipper has not carried out its contract. This is no concern of the bank. All that it agreed to do was to pay the sight draft and later deliver the bills of lading to the consignee. This duty it performed, and hence there was no evidence to go to the jury of nonperformance of any contract on the part of the Bank of Italy.
 

 Since the case was wrongfully submitted to the jury, prejudice resulted, and the judgment of the Court of Appeals must be reversed; and, there being no evidence whatever in the record of breach of contract on the part of the California bank, judgment must be entered for the plaintiff in error.
 

 Judgment reversed and judgment for plaintiff in error.
 

 Kinkade, Robinson, Jones and Matthias, JJ., concur.